**The People of the State of Illinois, Plaintiff-Appellee, v. Ivan Light, Defendant-Appellant.**

Gen. No. M–10,670.

Fourth District.

February 21, 1966.

Rehearing denied March 19, 1966.

Ivan Light, of Shirley, pro se.

Hugh H. Henry, of Bloomington, for appellee.

TRAPP, P. J.

Defendant appeals from a judgment of guilty, following a jury trial, upon an information charging the operation of a motor vehicle of the second division without having a certificate of safety required by Ill Rev Stats 1963, chap 95½, § 220, and from the judgment imposing a fine of $15 and costs for the violation.

The defendant contends that a verdict should have been directed in his favor and his motion in arrest of judgment should have been allowed, for the reason that a certificate of safety was required only for motor vehicles of the second division and it was not established that his pickup truck was a motor vehicle of the second division as defined by the statute.

On June 6, 1964, the defendant, whose occupations include that of farm owner and operator, drove his 1961 International pickup truck from the Shirley bridge across U. S. Highway 66. There were one or two passengers in the truck and a few items such as peat moss bags and pipes in the truck bed. The vehicle did not bear a current certificate of safety generally required of vehicles of the second division as defined in "An Act in relation to the regulation of traffic," (Ill Rev Stats 1963, c 95½, § 98–239). There was no other evidence of the use of the vehicle in question than the evidence of use on the occasion of the arrest on June 6, 1964.

Defendant's arguments regarding the violation of the statute may be condensed to the proposition that it was not established that his vehicle was a vehicle of the second division within the meaning of §§ 2, 123 and 123.10 of "An Act in relation to the regulation of traffic", (Ill Rev Stats 1963, c 95½, §§ 99, 220 and 220.10).

The "Act in relation to the regulation of traffic" classifies motor vehicles in § 2 (Ill Rev Stats 1963, c 95½, § 99), as follows:

"2. (a) Vehicle. Every device in, upon, or by which any person or property is or may be transported or drawn upon a highway, except devices moved by human power or used exclusively upon stationary rails or tracks.

"(b) Motor Vehicle. Every vehicle which is self propelled and every vehicle which is propelled by electric power obtained from overhead trolley wires, but not operated upon rails.

"For the purpose of this Act, motor vehicles as a class shall be divided into two divisions, viz.:

"First: Those vehicles which are designed and used for the carrying of not more than seven persons.

"Second: Those vehicles which are designed and used for pulling or carrying freight and also those vehicles or motor cars which are designed and used for the carrying of more than seven persons."

Section 123 of the Act (Ill Rev Stats 1963, c 95½, § 220) requires all vehicles of the second division, except those inspected under the supervision of the Illinois Commerce Commission, those owned by certain municipal corporations, trailers less than 3,000 pounds, and certain farm vehicles, to have a certificate of safety.

There is no contention that defendant's vehicle falls within the description of a vehicle designed and used for carrying of more than seven persons.

The question, therefore, resolves itself into the inquiry whether defendant's 1961 International pickup truck falls within the statutory description of "vehicles which are designed and used for pulling or carrying freight."

■ Defendant contends that the word "and" between "designed" and "used" is conjunctive and that, therefore, some meaning must be given to both the words "de-

signed" and "used." Since we agree with this contention, no elaborate discussion of this point is required.

Defendant further contends that "freight" has a technical meaning which relates exclusively to property carried for hire. With this we cannot agree. While it may be true that the term "freight" is commonly associated with transportation for hire, the term is also used to describe the cargo itself as distinguished from the financial arrangements regarding its transportation. We note that the Shorter Oxford English Dictionary, 1934, defines "freight" as having the usage in the United States as "anything carried by sea or land," and that Webster's New World Dictionary of American Language, 1960, in defining "freight," includes "goods transported" and "any load or burden." We take it to be used in a general sense and to be the equivalent of goods, merchandise, property, commodities and the like. In certain fields of enterprise, freight is distinguished from express, and land shipment (freight) from water shipment (cargo). There is no reason, however, to believe that the Legislature had these distinctions in mind.

It occurs to us that we should be guided rather by the purpose of the Act in seeking the intention of the Legislature than the possible technical meaning of certain phrases. This Act does define certain terms but it does not define freight in the text of this Act. It has been frequently stated by the Supreme Court that where the statute does not define the term, the term should be used in a popularly understood meaning rather than in a technical sense. Bowman v. Armour and Co., 17 Ill2d 43 on 52, 160 NE2d 753, Farrand Coal Co. v. Halpin, 10 Ill2d 507 on 510, 140 NE2d 698. See also, Ill Rev Stats, 1963, chap 131, sec 1.01, regarding the construction of statutes as follows:

> "All general provisions, terms, phrases and expressions shall be liberally construed in order that

the true intent and meaning of the General Assembly may be fully carried out."

■ Constructions of statutes leading to absurd consequences are to be avoided. People ex rel. Bodecker v. Community Unit School Dist. No. 316, 409 Ill 526 on 531, 100 NE2d 573. This principle has been repeated by the Supreme Court many times. (Smith-Hurd Ill Ann Stats c 131, § 1.01, Note 5).

■ Statutes must be construed in their entirety and in the light of their objectives. People v. Ikerd, 26 Ill2d 573 on 578, 188 NE2d 12.

■ If we are to be guided then by the purpose of the Legislature in analyzing the statute, we should consider the entire "Act in relation to the regulation of traffic," and the objective to be accomplished. The outstanding motive is obviously traffic safety. For this purpose, motor vehicles are classified in two divisions. There are not three, four or seven divisions, but only two. In general aspect, passenger cars, exclusive of busses, are in the first division, whereas trucks and busses are in the second division.

If we were to ignore the general framework of the Act, the specific definition of first division vehicles would include trucks because trucks are generally designed and used to carry no more than seven persons, and the first division gives no other characteristics of the vehicles in that subdivision.

In the format of the statute we should construe the first division and the second division as mutually exclusive. It would, therefore, appear out of order to have a particular vehicle appear in both divisions.

■ Additionally, since all motor vehicles are designed to carry "persons," common sense would dictate that the word "primarily" be inserted at an appropriate point to distinguish trucks from passenger cars. Therefore, we would not place trucks in the first division merely

487

because they are designed and used to carry persons. Thus, the first division would include those motor vehicles designed "primarily" to carry persons and not more than seven. This same construction would eliminate trucks, which are primarily designed to carry property, from the first division vehicles.

Now the purpose of the requirement of a safety certificate on the vehicles of the second division is safety of the public. Large passenger cars, or busses, carrying more than seven persons are obviously in the second division. They are exempted from Section 123 (c 95½, § 220) only because they are separately inspected by the Illinois Commerce Commission. The tests suggested in the fourth paragraph of § 123 appear to be directed to some extent to features applicable only to larger vehicles or trucks.

If we are to accept the defendant's contention that only trucks carrying freight for hire are in the second division and all other trucks, irrespective of size, are in the first division, we come to an absurdity. Company owned vehicles of the largest size, including the largest tractors and trailers are a common fact of our society. The defendant's interpretation would exempt these large vehicles from safety inspection merely because they did not carry freight in the limited sense of carrying commodities for hire.

Since we cannot accept the idea that the Legislature intended to put large company owned trucks in the first division along with passenger cars, and at the same time, place small pickup trucks used by express companies in the second division, we are forced to the conclusion that all trucks, that is to say, all motor vehicles designed primarily for carrying property, are vehicles of the second division.

Defendant objects that to give effect to the word "and" in the phrase "designed and used," there must be some proof that the offending vehicle was actually used

488

in transporting property for hire. We have eliminated the question of "for hire." We are now asked to say that no truck, no matter what its size, can be in violation unless proof is made that at some time it is "used" for carrying property. Certainly defendant does not mean that the Legislature intended that a vehicle otherwise within § 123 (Ill Rev Stats c 95½, § 220) would be exempt from the statute when driven empty. Neither would it appear to have been the legislative intent to require proof of carrying property at some time in the vehicle by the operator or by the owner.

We believe the most sensible construction of the word "used" means, for the purpose of the "Act in relation to the regulation of traffic on highways," the use referred to in § 123.10 (Ill Rev Stats c 95½, § 220.10), that is to say, operation upon the highways. Many persons or firms own vehicles but do not license or use them in a particular year. These unused vehicles would not be included.

By the same reasoning, a 20-passenger bus, which is used on the highway, is a vehicle of the second division, even though less than seven passengers are riding in it.

The interpretation which we give these divisions then is this: a vehicle of the first division is one designed primarily for carrying persons, not more than seven, and is used; a vehicle of the second division is either a vehicle designed primarily for carrying property, which vehicle is used, or a vehicle designed primarily for carrying more than seven persons, which vehicle is used.

We cannot agree that use means "customary use by the defendant." Defendant's authorities, Scott v. Freeport Cas. Co., 392 Ill 332, 64 NE2d 542, and Maringer v. Bankers Indemnity Ins. Co., 288 Ill App 335, each relate to the construction of insurance policies and whether or not the benefits of the policy were forfeited because of a casual use of a vehicle. The doctrine of customary use under such type of contract is not con-

trolling of the term "used" in defining vehicles of the second division, and we think that one use upon the highway without the appropriate certificate would be a violation of the statute designed to promote safety.

We cannot accept the defendant's argument that the International pickup truck is exempted as a farm vehicle for the reason that there is nothing which adapts it uniquely or primarily to agricultural pursuits.

Defendant argues that the Legislature intended to distinguish vehicles of the second division from a "truck" defined in chap 95½, § 1-185 (Ill Rev Stats 1957), as:

> ". . . . Every motor vehicle designed, used or maintained primarily for the transportation of property. . . .",

and that if the Legislature meant to include trucks as such in the class requiring safety stickers, it could or should have so specified. As a matter of historical development, the statute defining vehicles of the first and second divisions was adopted in 1935, (Ill Rev Stats 1935, c 95½, § 99). In 1939, the Legislature first adopted a statute prescribing inspections as a safety measure directed to the owner of a truck subject to regulation under the provisions of:

> "An Act in relation to the regulation of the operation of trucks designed or used for the transportation of property."

The latter Act, defined and applied to all forms of public and private carriers, including individuals who carried their own private property. The language prescribing safety inspections continued in such form until the Act adopted in 1957, at which time the Legislature adopted the present language extending the requirements to all vehicles of the second division. There is nothing in such legislative history which seriously suggests a legislative intent to reduce the number, or restrict the nature,

490

of vehicles coming within the prescription of the safety provisions.

We have examined the propositions of counsel and the authorities regarding interpretation of the particular words, but we are persuaded that the Legislature intended a dichotomous division of motor vehicles for the purpose of this Act and intended such division to be practical.

As an additional error, defendant contends that the trial court should have required the People to state whether the truck was a motor vehicle of the second division because it was designed and used for carrying more than seven persons, or because it was designed and used for carrying freight.

Under our view of the interpretation of the statute, the indictment charging the driving of a 1961 International pickup truck definitely placed the charge as one of driving a vehicle designed and used to carry freight without having the proper certificate.

Our view of the statute also disposes of the errors charged regarding the instructions.

Complaint is made of the failure of the trial court to impose the sentence of a fine for a period of 49 days after the judgment of guilty. The rule previously obtaining, and incorporated in the new Code of Criminal Procedure (Ill Rev Stats 1963, c 38, § 118–1(c)), is that upon a verdict of guilty, sentence shall be pronounced within a reasonable time. Here, the judgment of guilty was entered October 30, 1964. Defendant filed a motion in arrest of judgment November 20, 1964. Sentence was pronounced December 18, 1964. No hearing was had upon the motion in arrest of judgment until March 17, 1965. It, therefore, appears that the motion was pending when sentence was pronounced. We are not supplied with any other facts regarding the delay in sentence. In People v. Ragen, 392 Ill 423 on 428, 64 NE2d 872, the Supreme Court said:

491

"What is a reasonable time is dependent upon matters that are pending before the court and is limited to such period as may be necessary for the court to dispose of motions for a new trial, in arrest of judgment, or for other good cause."

 ██ On the limited record here presented, we cannot say that the delay of 49 days in pronouncing sentence caused the court to lose jurisdiction. The party asserting that the time is unreasonable should furnish the court with evidence of circumstances which make the time unreasonable in the particular case. Without more, this court is unable to determine whether the time was reasonable or unreasonable.

The judgment of the Circuit Court of the Eleventh Judicial Circuit, McLean County, is affirmed.

Affirmed.

SMITH and CRAVEN, JJ., concur.