THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DIEGO RUIZ, a/k/a Diego Ruiz Cortez, Defendant-Appellant.

Second District    No. 84—0674

Opinion filed June 14, 1985.

G. Joseph Weller and Manuel S. Serritos, both of State Appellate Defender's Office, of Elgin, for appellant.

Robert J. Morrow, State's Attorney, of Geneva (Phyllis J. Perko and Martin P. Moltz, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

PRESIDING JUSTICE NASH delivered the opinion of the court:

After trial by jury, defendant, Diego Ruiz, was convicted of burglary (Ill. Rev. Stat. 1983, ch. 38, par. 19—1) and felony theft (Ill. Rev. Stat. 1983, ch. 38, par. 16—1(a)). He was sentenced to concurrent terms of imprisonment of six years for burglary of a trailer and five years for theft of a Honda Prelude automobile.

The single issue presented by this appeal is whether a semi-tractor-trailer is a structure which can be the subject of the offense of burglary. We conclude that it may and affirm the judgment of the trial court.

At about 8 p.m. on Sunday, November 13, 1983, defendant was apprehended, together with Lee Ann Blann, his girlfriend, in the trailer in question. It was a common variety of semitrailer, made of metal, with three sides, a roof and floor and an overhead sliding door in the rear. The trailer sat on eight rear wheels and was supported at the front end by rolled-down jack-stands. It could become mobile by backing a truck tractor under the front end, raising the jack-stands

and connecting the trailer to the truck. At the time in question there was no tractor-truck present.

The trailer was parked with its door against the loading dock of the Horizon Products factory in St. Charles; the business was closed that weekend. That company manufactured wire from aluminum rod and used the trailer to store aluminum scrap. The trailer was supplied and owned by a salvage company and parked by it on the factory premises. When loaded with boxes of aluminum scrap from the factory, averaging a three-month period, the salvage company would remove the trailer and replace it with an empty one. In order to do so a truck tractor would bring in the empty trailer and hook onto the full one to haul it away. The trailers are not moved at the site by the Horizon Products company, but always remain at the loading dock. The door of the trailer was kept either locked or fastened closed with wire.

After his arrest defendant stated to officers he and Bland wanted to steal some scrap and, also, that he had purchased the Honda automobile parked next to the trailer for $1,000 knowing it was stolen.

Defendant contends that the trailer which he entered to steal aluminum scrap is not a building, motor vehicle or otherwise designated in the burglary statute as subject to that offense. The State asserts the trailer is a structure which may be considered either a motor vehicle, housetrailer or building under the statute.

The legislature has defined the offense of burglary as follows:

"A person commits burglary when without authority he knowingly enters or without authority remains within a building, housetrailer, watercraft, aircraft, motor vehicle as defined in The Illinois Vehicle Code, railroad car, or any part thereof, with intent to commit therein a felony or theft. This offense shall not include the offenses set out in Section 4—102 of The Illinois Vehicle Code, nor the offense of residential burglary as defined in Section 19—3 hereof." Ill. Rev. Stat. 1983, ch. 38, par. 19—1(a).

We consider first whether the semi-tractor trailer entered by defendant is a motor vehicle within the scope of section 19—1 so as to be the subject of burglary, and find it is not.

A motor vehicle as defined by the Illinois Vehicle Code, as the burglary statute requires, is as follows:

"Motor Vehicle. Every vehicle which is self-propelled and every vehicle which is propelled by electric power obtained from overhead trolley wires, but not operated upon rails. For this Act, motor vehicles are divided into two divisions:

First Division: Those motor vehicles which are designed for the carrying of not more than·10 persons.

Second .Division: Those motor vehicles which are designed for carrying more than 10 persons, those designed or used for living quarters and those motor vehicles which are designed for pulling or carrying freight or cargo, and those motor vehicles of the First Division remodelled for use and used as motor vehicles of the Second Division." Ill. Rev. Stat. 1983, ch. 95½, par. 1—146.

It seems apparent that the trailer in issue, not being attached to a truck tractor, is neither a self-propelled vehicle nor propelled by electric power and is thus not a motor vehicle. The State's argument that the truck trailer is designed for "pulling or carrying freight or cargo" as described for "Second Division" motor vehicles, overlooks the prerequisite that to be a motor vehicle it must have propulsion capabilities under the definitional statute. The trailer in the present case does not meet that requirement. The cases upon which the State relies are distinguishable, as in each the vehicle deemed subject to burglary was motorized. See, *e.g., People v. Light* (1966), 67 Ill. App. 2d 481, 214 N.E.2d 626; *People v. Frey* (1984), 126 Ill. App. 3d 484, 467 N.E.2d 302.

The parties have also argued whether the "semi-tractor trailer" in issue may be properly classified as a housetrailer and thus be subject to burglary. The Illinois Vehicle Code defines a housetrailer as follows:

"(a) A trailer or semitrailer equipped and used for living quarters or for human habitation (temporarily or permanently) rather than for the transportation of freight, goods, wares and merchandise; or

(b) A house trailer or a semitrailer which is used commercially (temporarily or permanently), that is, for the advertising, sales, display or promotion of merchandise or services, or for any other commercial purpose except the transportation of property for hire or the transportation of property for distribution by a private carrier." Ill. Rev. Stat. 1983, ch. 95½, ch. 1—128.

Subsection (a) of the statute defining a housetrailer does not apply here, as the semitrailer in question was not equipped and being used for living quarters. Under subsection (b), however, the evidence established that it was a semitrailer used for the commercial purpose of storing aluminum scrap metal for sale to the Elgin Salvage & Supply Co., Inc., which had parked it at the factory collection point. We consider that the evidence does literally comply with the definition of a

housetrailer made by the legislature in section 1—128 of the Illinois Vehicle Code and thus brings this trailer within the scope of the burglary statute.

We consider finally whether the subject semi-tractor-trailer is a building within the concept of the burglary statute. Defendant argues that a truck trailer which is not attached to a building and was to be removed when filled cannot be considered within the commonly accepted meaning of the term "building," relying essentially upon *In re Interest of E.S.* (1981), 93 Ill. App. 3d 171, 416 N.E.2d 1233. The State contends that the burglary statute should logically protect anyone who wishes to house and protect his property, regardless of the structure so used, and the trailer here should be so classified. The State does not offer specific authority in support of its view.

Illinois courts of review have often considered the concept of "building" as it relates to the offense of burglary and have found the following to be within its scope: a chicken house (*Gillock v. The People* (1898), 171 Ill. 307, 49 N.E. 712); a partially built tool shed (*People v. Gillespie* (1931), 344 Ill. 290, 176 N.E. 316); an open-ended car wash (*People v. Blair* (1972), 52 Ill. 2d 371, 288 N.E.2d 443); a telephone booth (*People v. Embry* (1973), 12 Ill. App. 3d 332, 297 N.E.2d 604); and a tent (*People v. Netznik* (1978), 66 Ill. App. 3d 72, 383 N.E.2d 640). Compare *In re Interest of E.S.* (1981), 93 Ill. App. 3d 171, 416 N.E.2d 1233, where this court declared that a fenced-in lot adjacent to a shop building was not a building within the meaning of the burglary statute.

The function of the courts in construing a statute is to ascertain and give effect to the intent of the legislature. (*People v. Rink* (1983), 97 Ill. 2d 533, 539, 455 N.E.2d 64.) In doing so it is proper to consider not only the language of the statute, but also to look to the reason for the law, the evils to be remedied, and the objects and purposes to be obtained. *People v. Alejos* (1983), 97 Ill. 2d 502, 511, 455 N.E.2d 48.

We think the analysis made by the court in *People v. Netznik* (1978), 66 Ill. App. 3d 72, 383 N.E.2d 640, is on the mark. It found that "the legislature, by its use of the word 'building', intended to protect the security and integrity of a wide variety of structures, all of which are characterized by their nature and use as a habitat or shelter." (*People v. Netznik* (1978), 66 Ill. App. 3d 72, 75. See Ill. Rev. Stat. 1983, ch. 38, par. 19—3(a), defining residential burglary.) That court concluded the provision was intended to secure the person or property of a tent-dweller in the use of his tent to the same extent it secures owners who shelter their property in other structures.

The trailer in question was being used for storage and shelter of scrap metal which was to be sold. That such use of this trailer was temporary, as it was expected to be filled in a three-month period, does not detract from its use as a building to shelter the property. As such we conclude, under the evidence of this case, the trailer was a building within the meaning of the burglary statute.

Accordingly, the judgment of the circuit court will be affirmed.

Affirmed.

STROUSE and UNVERZAGT, JJ., concur.