First Division
May 30, 2006

Nos.  1-04-2305)
      1-04-3038)

THE PEOPLE OF THE STATE OF ILLINOIS,           )    Appeal from
                                               )    the Circuit Court
      Plaintiff-Appellee,                      )    of Cook County
                                               )
            v.                                 )    03  CR 25185
                                               )
JEROME JONES and DERRICK REEVES,               )
                                               )    Honorable
      Defendants-Appellants.                   )    John J. Moran, Jr.,
                                               )    Judge Presiding

JUSTICE McBRIDE delivered the opinion of the court:

In October 2003, defendants Jerome Jones and Derrick Reeves were arrested for the

burglary of a semitrailer belonging to Hammer Express and the theft of chairs contained in the

semitrailer.  Defendants were found guilty following a joint bench trial, and Jones was sentenced

to 30 months' probation while Reeves was sentenced to three-years' probation.

Defendants appeal, arguing that (1) their convictions for burglary should be reversed

because the State failed to establish that the semitrailer was "a motor vehicle" within the

definition of the burglary statute; (2) their convictions for felony theft must be reduced to a Class

A misdemeanor and remanded for a new sentencing hearing because the State failed to prove

beyond a reasonable doubt that the fair market value of the chairs was more than $300; (3) their

convictions for felony theft must be reduced to a Class A misdemeanor and remanded for a new

sentencing hearing because they were denied their sixth amendment right to right to confront and

cross-examine witnesses since the State relied on hearsay evidence to prove the element of a

superior interest over the property in the semitrailer; and (4) the statute authorizing the

compulsory extraction and perpetual storage of the DNA of felons violated defendants'

fourth amendment rights.

The following evidence was presented at defendants' April 2004 bench trial.

Pat Barrett testified that he is the president and owner of Hammer Express, an intermodal trucking company located at 9100 West Plainfield Road, Brookfield, Illinois. Barrett stated that Hammer Express picks up product at railroad facilities and delivers it throughout the Midwest.

On October 23, 2003, Barrett learned that a semitrailer had been stolen from his property in Brookfield and was later found in Chicago. Barrett identified the semitrailer in pictures at trial. He said the semitrailer was in a different condition than it was on his property. Specifically, Barrett stated that semitrailers are sealed when they are loaded, and the seal was "busted" on that semitrailer because it was open.

Barrett testified that he is not the owner of the semitrailer's contents, but he took out cargo insurance on the contents because he is responsible for it when it is in his company's possession. Barrett stated that he does not know the defendants and did not give "consent, permission or authority to exercise possession or control" over the semitrailer.

On cross-examination, Barrett stated that the semitrailer is not attached to the chassis. He admitted that he did not see the semitrailer in the lot, but his personnel saw it. He said that he has business records to verify the driver, but he did not bring them to court. He said he thought the semitrailer was on the lot for a day or so before it was stolen. Barrett stated that the lot is not secured with a fence or security. Barrett stated that this semitrailer could not be called a trailer because a trailer is a one-piece unit where the container and chassis are connected as one.

Officer Timothy Bassie testified that he is an officer assigned to Union Pacific Railroad

police in Chicago. At around 5 a.m. on October 23, 2003, Officer Bassie was doing a routine patrol in the general area of a rail yard near 1321 South Oakley in Chicago. While on patrol, Officer Bassie observed numerous individuals unloading a semitrailer on the 1300 block of South Oakley. Officer Bassie was just north of the location at the intersection of 13th Street and Oakley. Officer Bassie stopped his vehicle and continued to watch what was taking place. The area was lit by streetlights and his view was unobstructed.

Officer Bassie saw Reeves standing inside the semitrailer and handing boxes down to Jones and two additional black males. The boxes were large cardboard boxes, approximately 3 to 3 ½ feet tall by 2 to 2 ½ feet tall. After Reeves handed the box to Jones, Jones walked west to a vacant lot where there were numerous other boxes and he put it down with the others. Officer Bassie saw six to eight boxes in the lot. While Jones was placing the box in the lot, Reeves continued to hand boxes to other individuals. Officer Bassie also saw a fifth person standing on the southwest corner of Oakley and 13th. This person was watching Officer Bassie.

Officer Bassie radioed for assistance of burglary in progress. Officer Bassie saw the person on the corner take out a cell phone, dial a number, and within seconds of dialing, Reeves retrieved a cell phone and answered. The person on the corner walked westbound away from Officer Bassie. Reeves climbed down from the semitrailer and began to walk toward Officer Bassie. Officer Bassie identified himself as a police officer to Reeves and told him to remove his hand from his pocket. Reeves refused and kept approaching Officer Bassie. Officer Bassie heard Reeves stating, "I'm the one that called you guys."

Officer Bassie then removed his duty weapon and pointed it at Reeves and ordered him to

3

remove his hand from his jacket pocket. Reeves did not comply and continued to approach until the 12th District unit arrived at the scene to offer assistance, then Reeves started to back off. As the backup unit pulled up, Reeves ran westbound toward the lot where the boxes were stacked.

While Reeves approached him, Officer Bassie saw Jones and the other two individuals standing in the lot. When Reeves began to flee, he called to the others and they also began to run. Officer Bassie notified the responding car by radio to go one block over to Heath while he continued to pursue Reeves. At one point, Reeves jumped over a six-foot fence and caught his pants, which caused him to hang upside down from the fence. Officer Bassie caught up to Reeves and found him hanging by his pants to the fence. Reeves' pants were ripped in half. Officer Bassie removed Reeves' pants from the fence and placed Reeves under arrest. Officer Bassie saw the responding officers placing Jones under arrest when he was arresting Reeves. Officer Bassie identified Jones as one of the offenders. The three other offenders were never caught. Additionally, a woman was discovered in the front passenger seat of a red Pontiac in the alley. She was lying down with the seat fully reclined.

Officer Bassie learned that the cardboard boxes contained designer, high-end office chairs, priced at over $600 each. Officer Bassie discovered this information after running the semitrailer and chassis numbers to find the owner. He then found out the manufacturer of the chairs and the manufacturer told him the price value of the chairs.

Officer Stremplewski testified that he is assigned to the 12th District with the Chicago police department. In the early morning hours of October 23, 2003, Officer Stremplewski was working with his partner in uniform on routine patrol. At some point during his patrol, Officer

4

Stremplewski responded to a call of a burglary in progress in the vicinity of 13th and Oakley.

When they arrived at the scene, Officer Bassie told them that there were several subjects taking "stuff" out of a semitrailer and had fled the scene through a vacant lot. They then drove their squad car around the block to Heath, which is one block west of Oakley. They saw one of the offenders described by Officer Bassie. Officer Stremplewski identified that individual in court as Jones. Officer Stremplewski and his partner got out of the car and arrested Jones after a very brief foot chase. Officer Bassie later identified Jones as one of the offenders. Officer Stremplewski witnessed Officer Bassie arrest Reeves, whom Officer Stremplewski identified in court.

Following Officer Stremplewski's testimony, the State rested its case in chief. The defendants moved for a directed verdict, arguing that the semitrailer is not a motor vehicle and that the State did not prove the value of the chairs on the theft count. The trial court denied the defendants' motion.

Sharronda Williams testified for the defendants. She stated that she was 20 years old and lived at 1318 South Komensky. She attends Malcolm X College. She stated that she knows Reeves and was acquainted with Jones.

On October 23, 2003, Williams was with Reeves. The two of them went to the movies, and after the movies they picked up Jones. Williams said they picked up Jones around 1 a.m. From there, they went to go pick up Williams' friend Amanda Tribble. Tribble lives at 1308 South Oakley. Reeves drove into alley near Oakley because he had to go to the bathroom. When Reeves stopped the car, he went to use the restroom

5

behind some trash cans and Jones went to get Amanda. Jones never returned to the car because he was arrested at that time. Williams testified that Reeves was also arrested at that time. Williams stated that she was sitting up in the car when this was going on. She said they had been there less than five minutes before Reeves and Jones were arrested. Williams said she was told by a police officer to get out of the car, and she complied. She was placed in the back of a police car and driven around the block a few times while the police looked for another suspect. She was placed under arrest.

On cross-examination, Williams stated that she was dating Reeves at the time of the offense, but was no longer dating him at the time of trial. She stated that she and Reeves, Jones, and Tribble were going to go on a double date bowling at a 24-hour bowling alley on North Avenue.

Following Williams' testimony, the defendants rested. The trial court found both defendants guilty of burglary and felony theft. It noted that the testimony of the police officers was credible and defendants' witness was not credible. Jones was sentenced to 30 months of probation and ordered to pay costs of $549. Reeves was found TASC eligible and sentenced to three years of probation with $499 in costs. Both defendants were required to submit for DNA testing.

This appeal followed.

First, defendants argue that the State failed to prove that the semitrailer they entered was a motor vehicle within the meaning of the burglary statute. The State responds that defendants

were charged with "burglary, in that they knowingly and without authority entered a motor

vehicle or any part thereof," and the semitrailer qualifies as a "motor vehicle or any part thereof."

"When considering a challenge to a criminal conviction based upon the sufficiency of the

evidence, it is not the function of this court to retry the defendant." People v. Hall, 194 Ill. 2d

305, 329-30 (2000). Rather, our inquiry is limited to "whether, after viewing the evidence in the

light most favorable to the prosecution, *any* rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt." (Emphasis in original.) Jackson v. Virginia,

443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (1979); accord People v. Cox,

195 Ill. 2d 378, 387 (2001). "Only where the evidence is so improbable or unsatisfactory as to

create reasonable doubt of the defendant's guilt will a conviction be set aside." Hall, 194 Ill. 2d

at 330.

The Criminal Code of 1961 defines burglary as follows:

> "A person commits burglary when without authority he
>
> knowingly enters or without authority remains within a building,
>
> housetrailer, watercraft, aircraft, motor vehicle as defined in The
>
> Illinois Vehicle Code, railroad car, or any part thereof, with intent
>
> to commit therein a felony or theft. This offense shall not include
>
> the offenses set out in Section 4-102 of The Illinois Vehicle Code."
>
> 720 ILCS 5/19-1(a) (West 2002).

The question before this court is whether a semitrailer that is not connected to a truck

falls within the statutory definition of "a motor vehicle or any part thereof."

The cardinal rule of statutory interpretation, to which all other rules are subordinate, is to ascertain and give effect to the intent of the legislature. People v. Maggette, 195 Ill. 2d 336, 348 (2001). In determining the legislature's intent, a court should first consider the statutory language; this is the best means of determining the legislative intent. Maggette, 195 Ill. 2d at 348. A court must consider the entire statute and interpret each of its relevant parts together. Paris v. Feder, 179 Ill. 2d 173, 177 (1997). "If legislative intent can be ascertained from the statute's plain language, that intent must prevail without resort to other interpretive aids." Paris, 179 Ill. 2d at 177.

"Motor vehicle" is defined in the Illinois Vehicle Code as:

"Every vehicle which is self-propelled and every vehicle which is propelled by electric power obtained from overhead trolley wires, but not operated upon rails, except for vehicles moved solely by human power and motorized wheelchairs. For this Act, motor vehicles are divided into two divisions:

First Division: Those motor vehicles which are designed for the carrying of not more than 10 persons.

Second Division: Those motor vehicles which are designed for carrying more than 10 persons, those motor vehicles designed or used for living quarters, those motor vehicles which are designed for pulling or carrying freight, cargo or implements of

8

husbandry, and those motor vehicles of the First Division remodelled for use and used as motor vehicles of the Second Division."  625 ILCS 5/1-146 (West 2002).

The defendants contend that the semitrailer does not fit within this definition of a motor vehicle because the semitrailer involved in the case was not capable of self-propulsion.  We agree that the semitrailer is not a motor vehicle within this definition.  However, the burglary statute includes "any part" of a motor vehicle, and we must consider whether the semitrailer is part of a motor vehicle.

The Illinois Vehicle Code defines "semitrailer" as:

"Every vehicle without motive power, other than a pole trailer, designed for carrying persons or property and for being drawn by a motor vehicle and so constructed that some part of its weight and that of its load rests upon or is carried by another vehicle."  625 ILCS 5/1-187 (West 2002).

The semitrailer in this case fits within this definition.  The evidence at trial showed that the semitrailer is designed to be placed on a chassis and connected to a truck tractor.

"Truck tractor" is defined as:

"Every motor vehicle designed and used primarily for drawing other vehicles and not so constructed as to carry a load other than a part of the weight of the vehicle and load so drawn." 625 ILCS 5/1-212 (West 2002).

To determine legislative intent, we may properly consider not only the language of the statute, but also the purpose and necessity for the law, the evils sought to be remedied, and goals to be achieved. People v. Palmer, 218 Ill. 2d 148, 156 (2006). We presume that the legislature did not intend absurdity, inconvenience or injustice. Palmer, 218 Ill. 2d at 156.

If we look at the definitions of "semitrailer" and "truck tractor" together, our interpretation is that these two vehicles are designed to work as one vehicle when connected. A semitrailer is designed to be part of a motor vehicle. Its purpose, according to the statutory definition, is to transport cargo when it is attached to a motor vehicle, such as, a truck tractor. Furthermore, a semitrailer does not automatically lose its design and function when it is detached from a motor vehicle. It logically follows that a semitrailer is "any part thereof"of a motor vehicle within the ambit of the burglary statute.

Defendants assert that even if a semitrailer is part of a motor vehicle when connected to a truck tractor, it is not part of a motor vehicle when it is not connected, as in the present case. Defendants rely on People v. Ruiz, 133 Ill. App. 3d 1065 (1985), and People v. Denton, 312 Ill. App. 3d 1137 (2000), in their argument that a semitrailer is not a motor vehicle.

In Ruiz, the Second District found that a similar semitrailer is not a motor vehicle within the scope of the burglary statute. Ruiz, 133 Ill. App. 3d 1067. In that case, the semitrailer was parked next to a loading dock and was used to store boxes of aluminum scrap. The semitrailer would be hauled away when full, averaging once every three months, and replaced with a new empty semitrailer. Ruiz, 133 Ill. App. 3d at 1066. The court concluded that since the semitrailer was not attached to a truck tractor and was not a self-propelled vehicle or propelled by electric

10

power, it was not a motor vehicle.  Ruiz, 133 Ill. App. 3d at 1067.  Instead, the court determined that because the semitrailer was being used for the storage and shelter of scrap metal, it complied with the definitions of a housetrailer and a building, and thus it fell within the burglary statute. Ruiz, 133 Ill. App. 3d at 1067-69.

Similarly, in Denton, the defendant argued that the semitrailers he entered were not any type of structure specified in the burglary statute.  Denton, 312 Ill. App. 3d at 1139.  The Denton court followed Ruiz's broad holding that the term "building" included a commercial semitrailer used for the storage of goods that would later be delivered to a buyer.  Denton, 312 Ill. App. 3d at 1139.  The reviewing court declined to address whether the semitrailers at issue were also "housetrailers" or "motor vehicles" under the burglary statute.  Denton, 312 Ill. App. 3d at 1139-40.

Ruiz and Denton are clearly distinguishable from this case since neither considered whether a semitrailer was "any part thereof" of a motor vehicle within the scope of section 19-1(a).  The semitrailers in those cases were used primarily for storage and shelter, whereas in the instant case, Barrett testified that Hammer Express would pick up cargo from railroad facilities and then deliver the products across the Midwest.  Barrett did not give any testimony indicating that semitrailers are used primarily for storage in his business.

Our conclusion that a semitrailer is "any part thereof" of a motor vehicle under the burglary statute advances the legislature's intent to protect the security of structures.  The legislature's inclusion of the broad phrase "any part thereof" to its list of specified structures extended the protection of the burglary statute.  Since we have concluded that a semitrailer is

11

"any part thereof" of a motor vehicle within the scope of the burglary statute, the State sufficiently proved defendants guilty of burglary.

Next, the State contends and defendants concede that if this court affirms defendants' convictions for burglary, then we need not consider the issues defendants raised regarding their theft convictions because the trial court properly merged the burglary and theft counts in accordance with the one-act, one-crime rule. See People v. Garcia, 179 Ill. 2d 55, 71 (1997) ("[w]hen multiple convictions of greater and lesser offenses are obtained for offenses arising from a single act, a sentence should be imposed on the most serious offense and the convictions on the less serious offenses should be vacated"). Since we have affirmed defendants' burglary convictions, we need not review the issues relating to defendants' theft convictions.

Defendants also assert that section 5-4-3 of the Unified Code of Corrections, which allows for the extraction and storage of the deoxyribonucleic acid (DNA) of convicted felons, violates his fourth amendment right to be free from unreasonable searches and seizures.

Section 5-4-3 mandates DNA sampling from any person convicted or found guilty "of any offense classified as a felony under Illinois law." 730 ILCS 5/5-4-3(a) (West 2002). Such persons "shall, regardless of the sentence or disposition imposed, be required to submit specimens of blood, saliva, or tissue to the Illinois Department of State Police in accordance with the provisions of this [s]ection." 730 ILCS 5/5-4-3(a) (West 2002).

Defendants maintain that the search provided for is unreasonable because it

12

serves no special need aside from general law enforcement. In the alternative, they contend that any special need presented by the State is outweighed by defendant's privacy interests. The Illinois Supreme Court has recently, directly addressed defendants' contentions in People v. Garvin, No. 99031 (March 23, 2006) and rejected their arguments. The Garvin court held that the "main purpose" for the collection of DNA was "to absolve innocents, identify the guilty, deter recidivism by identifying those at a high risk of reoffending, or bring closure to victims" which it found distinct from "traditional law enforcement practices designed to gather evidence in a particular case to solve a specific crime that ha[d] already been committed." Garvin, slip op. at 13-14. The Garvin court further held that, on balance, the special need of the State outweighed the privacy interests of its defendant both because of the minimal intrusion presented by a blood draw (Garvin, slip op. at 15) and because of the reduced privacy expectations of convicted felons (Garvin, slip op. at 15-16). Therefore, the circuit court's order requiring extraction and storage of defendant's DNA was lawful.

For the foregoing reasons, we affirm the decision of the circuit court of Cook County.

Affirmed.

GORDON and BURKE, JJ., concur.