# Illinois Official Reports

## Appellate Court

<div style="border:1px solid black;">

### *People v. Harris*, 2016 IL App (1st) 141746

</div>

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. EUGENE HARRIS, Defendant-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1-14-1746 |
| Filed | October 26, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-CR-16051; the Hon. Timothy J. Joyce, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, and Kristen E. Mueller, of State Appellate Defender's Office, for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Clare Wesolik Connolly, and Joseph Dibella, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE COBBS delivered the judgment of the court, with opinion.<br>Presiding Justice Fitzgerald Smith and Justice Pucinski concurred in the judgment and opinion. |

¶ 1     Following a joint bench trial, defendant Eugene Harris and codefendant Eric McCann[1] were convicted of burglary. The trial court sentenced defendant to nine years' imprisonment as a Class X offender based upon his criminal history. On appeal, defendant solely contends that the State failed to prove him guilty beyond a reasonable doubt because the trailer that was entered did not constitute a "building" under the burglary statute. We affirm.

¶ 2     Defendant and codefendant were jointly charged with one count of burglary. The charging instrument alleged that "they, knowingly and without authority entered a building, to wit: a trailer, the property of Alexander Matos, located at 401 N. Damen Avenue *** with the intent to commit therein a theft."

¶ 3     At trial, Alexander Matos testified that he leased space in an open parking lot at 401 North Damen Avenue, where he parked his 36-foot, enclosed two-car racing trailer. The trailer contained all of his property that he used at the race track, including engine parts, battery chargers, and all of his tools. About 7 p.m. on August 29, 2011, Matos left his trailer locked in an "untouched" condition, with a large master padlock on the back door and dual locks on the right side door.

¶ 4     About 5:30 the following morning, Matos returned to his trailer and observed that it was still locked and in an untouched condition. At that time, Matos also observed defendant and codefendant walking eastbound with a shopping cart about 40 to 50 feet from his trailer, which was parked facing east. Matos recognized defendant and codefendant from the neighborhood, and knew codefendant McCann by his nickname "Ponytail." Matos then left the parking lot and went to work at his nearby mechanic shop.

¶ 5     About 8:30 that morning, Matos returned to his trailer and observed that the side door was broken and swung completely open, and the back door was cracked open and bent with the padlock and aluminum guardrail hanging from it. Matos ran inside his trailer and discovered that nearly all of his property was gone, including his racing parts, aluminum rods, titanium pistons, copperhead gaskets, two 16-volt battery chargers, and his telescopic mirror set.

¶ 6     Matos called John Mandik, a business acquaintance at Service Battery, Incorporated, which is a recycling facility that buys and sells aluminum and copper, located at 2048 West Hubbard Street. Matos then went to that location and saw several items of his property, including his rods, pistons, copper gaskets, and valve covers. While there, Matos viewed a surveillance video recorded at 7:35 that morning that showed defendant and codefendant bringing Matos's property to the facility. While the surveillance video was played for the court, Matos identified defendant and codefendant removing several items of his property from a bag. Later in the video, the defendants returned with more of Matos's property, including his tool chest, which contained several pieces of equipment.

¶ 7     About 10:20 a.m., Matos called his friend Hector Badillo who owns a body shop at 1917 West Lake Street. Badillo told Matos that McCann was trying to sell him Matos's droplights. Matos then went to the body shop and saw Badillo holding McCann down on the floor while

---

[1]Codefendant Eric McCann's appeal is pending before this court in case number 1-14-2136. He is not a party to this appeal.

defendant stood near the shop door. Police arrived within minutes, and Matos told them that the defendants had broken into his trailer and stolen his property.

¶ 8    In court, Matos identified photographs of his trailer taken after the burglary. Matos testified that he never gave either of the defendants permission to enter his trailer, nor did he give them permission to remove any of his property. Matos estimated that over $6000 worth of tools were stolen from his trailer, only some of which were recovered.

¶ 9    Chicago police officer Johnny Estrada testified that at about 10:30 a.m. on August 30, 2011, he was on patrol with his partner, Officer Hidalgo, near 1917 West Lake Street when Matos waved him down and said someone was being held whom he wanted the police to arrest. Officer Estrada entered the body shop and saw McCann being held down on the floor by another man. Officer Estrada knew McCann as "Ponytail" from prior encounters in the area. Defendant was standing nearby, calmly watching McCann struggle on the floor. Both defendants were arrested and transported to the police station. After being advised of his *Miranda* rights, defendant told Officer Estrada something to the effect of "man, I was there. I was a lookout for the police when Ponytail went inside of the trailer and took the stuff out."

¶ 10    Chicago police detective Daniel Switalski testified that during his investigation of the burglary, he advised defendant of his *Miranda* rights, after which defendant told him that he and Ponytail "had gotten together to do a lick on a trailer." Defendant further stated that he acted as the lookout while Ponytail broke off the lock with a sledgehammer, entered the trailer, and removed car parts. Defendant also said that he and Ponytail took the items in a shopping cart to a scrap yard on Hubbard Street, where they sold the items for $100.

¶ 11    The trial court found the testimony from Matos, Officer Estrada, and Detective Switalski credible and found both defendant and codefendant guilty of burglary. The court subsequently sentenced defendant to nine years' imprisonment as a Class X offender based upon his criminal history.

¶ 12    On appeal, defendant solely contends that the State failed to prove him guilty beyond a reasonable doubt because the trailer that was entered did not constitute a "building" under the burglary statute. Defendant argues that a building must be a permanent structure affixed to land. He further argues that the storage trailer in this case falls under the definition of a "semitrailer" in the Illinois Vehicle Code (625 ILCS 5/1-187 (West 2010)), which does not appear on the itemized list of structures protected under the burglary statute. Defendant acknowledges that two cases from the Second District previously found storage trailers to be buildings, but argues that those cases were wrongly decided.

¶ 13    The State responds that the trailer in this case met the definition of a "building" because it was immobile, not attached to any type of vehicle, and used to store and shelter goods. The State further asserts that defendant's argument has been rejected by other courts, which have found that a wide variety of structures qualify as buildings under the burglary statute, including semitrailers, a tent, a car wash, a tool shed, and a telephone booth.

¶ 14    When defendant claims that the evidence is insufficient to sustain his conviction, this court must determine whether any rational trier of fact, after viewing the evidence in the light most favorable to the State, could have found the elements of the offense proved beyond a reasonable doubt. *People v. Baskerville*, 2012 IL 111056, ¶ 31. This standard applies whether the evidence is direct or circumstantial and does not allow this court to substitute its judgment for that of the fact finder on issues involving witness credibility and the weight of the evidence. *People v. Jackson*, 232 Ill. 2d 246, 280-81 (2009). "Under this standard, all reasonable

inferences from the evidence must be allowed in favor of the State." *Baskerville*, 2012 IL 111056, ¶ 31.

¶ 15 In a bench trial, the trial court is responsible for determining the credibility of the witnesses, weighing the evidence, resolving conflicts in the evidence, and drawing reasonable inferences from therein. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009). We will not reverse a criminal conviction based upon insufficient evidence unless the evidence is so improbable or unsatisfactory that there is reasonable doubt as to defendant's guilt. *People v. Beauchamp*, 241 Ill. 2d 1, 8 (2011).

¶ 16 The offense of burglary is defined in the Criminal Code as follows:

"A person commits burglary when without authority he knowingly enters or without authority remains within a building, housetrailer, watercraft, aircraft, motor vehicle as defined in The Illinois Vehicle Code, railroad car, or any part thereof, with intent to commit therein a felony or theft." 720 ILCS 5/19-1(a) (West 2010).

In this case, to prove defendant guilty of burglary, the State was required to show that he knowingly and without authority entered a building, specifically a trailer, owned by Alexander Matos, located at 401 North Damen Avenue, with the intent to commit therein a theft. *Id.*

¶ 17 Defendant contends that "a storage trailer is not a 'building,' or any other structure covered by the burglary statute." Whether the trailer in this case constituted a building or any other enclosure specified in the burglary statute is a question of law that we review *de novo*. *People v. Almore*, 241 Ill. 2d 387, 394 (2011).

¶ 18 The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature. *People v. McClure*, 218 Ill. 2d 375, 381 (2006). The best indicator of legislative intent is the language of the statute, and where possible, the court should give that language its plain and ordinary meaning. *Id.* at 382. When determining the plain meaning of a statute, the court considers the subject the statute addresses and the legislature's purpose in enacting it. *People v. Lloyd*, 2013 IL 113510, ¶ 25. The court must construe a statute as a whole so that no part is rendered meaningless or superfluous, and the court should not depart from the language of the statute by reading into it limitations, exceptions, or conditions that conflict with the intent of the legislature. *McClure*, 218 Ill. 2d at 382.

¶ 19 Our supreme court has explained that "[t]he purpose of the burglary statute is 'to protect the security and integrity of certain specified enclosures, including motor vehicles.' " *Beauchamp*, 241 Ill. 2d at 8 (quoting *People v. Steppan*, 105 Ill. 2d 310, 317 (1985)). In the context of the burglary statute, a "building" has been defined as a structure or edifice designed for habitation or for the shelter of property. *In re E.S.*, 93 Ill. App. 3d 171, 172-73 (1981) (citing *People v. Gillespie*, 344 Ill. 290, 294 (1931) (finding that a partially built tool shed consisting of a roof and one wall and which was used to store property constituted a building)). Other structures that have been found to constitute buildings under the burglary statute include a tent (*People v. Netznik*, 66 Ill. App. 3d 72, 75 (1978)), an open-ended car wash (*People v. Blair*, 52 Ill. 2d 371, 373 (1972)), and a telephone booth (*People v. Embry*, 12 Ill. App. 3d 332, 336 (1973)). Further, this court has consistently held that trailers used to store property qualify as buildings within the meaning of the burglary statute. See *People v. Ruiz*, 133 Ill. App. 3d 1065, 1069 (1985); see also *People v. Denton*, 312 Ill. App. 3d 1137, 1139 (2000).

¶ 20 Defendant nonetheless argues, citing *Bruen v. People*, 206 Ill. 417, 423 (1903), that the trailer in the instant case was not a building within the meaning of the burglary statute because

it was not a permanent structure in that it was mobile and had only recently been parked in a lot the weekend prior to the offense. In 1903, the *Bruen* court held that a hotel was considered a building for the purpose of the burglary statute and defined "building" as "a fabric or edifice constructed for use or convenience; as a house, a church, a shop. It must be permanent and designed for the habitation of men or animals, or the shelter of property." (Internal quotation marks omitted.) *Id.* The burglary statute, however, was subsequently amended to protect a more expansive class of structures—such as aircrafts, motor vehicles, and housetrailers—not included in the previous statute. Compare Ill. Rev. Stat. 1903, ch. 38, ¶ 36, with Ill. Rev. Stat. 1969, ch. 38, ¶ 19-1(a). Although our supreme court in *People v. Blair*, 52 Ill. 2d 371 (1972), found the amended burglary statute to be a codification of pre-existing law, it did not include permanence in its construction of the term "building" under the amended statute. *Id.* at 374 (defining "building *** as a fabric, structure or edifice, such as a house, church, shop, or the like, designed for the habitation of men or animals or for the shelter of property; a structure" (internal quotation marks omitted)). In the absence of further direction from the supreme court following *Blair*, this court considered the question of permanence within the meaning of the burglary statute in *Netznik*, 66 Ill. App. 3d at 74. In finding that a tent qualified as a building under the statute, we stated:

> "[T]he legislature, by its use of the word 'building,' intended to protect the security and integrity of a wide variety of structures, all of which are characterized by their nature and use as a habitat or shelter. The definitional requirement of permanence can only be understood within this context. The mere fact that a tent is ordinarily portable does not alter the fact that when the structure is erected and is in use as a habitat or shelter, it achieves a degree of permanence regardless of whether such use extends for a single night or for a longer period. *** Rather we conclude that the provision was intended to secure the person or property of a tent-dweller or camper in the use of his tent to the same extent it secures that of an owner in the use of his house, church or shop." *Id.* at 75.

We see no reason to depart from our rationale in *Netznik* in the present case and decline to conclude that the trailer's potential mobility excluded it from protection as a building.

¶ 21  Similarly, in *People v. Ruiz*, 133 Ill. App. 3d 1065, 1069 (1985), the court found that a semitrailer used to store and shelter scrap metal was a building within the meaning of the burglary statute. The semitrailer was not connected to a truck while parked on the factory premises, and about every three months, when the trailer was full, it was hauled away and replaced with an empty trailer. *Id.* at 1066. In making its finding, the appellate court relied on the reasoning in *Netznik*, which found that by using the word "building," the legislature " 'intended to protect the security and integrity of a wide variety of structures, all of which are characterized by their nature and use as a habitat or shelter.' " *Id.* at 1068 (quoting *Netznik*, 66 Ill. App. 3d at 75). The *Ruiz* court found that although the use of the semitrailer was temporary, it did not detract from its use as a building to shelter property. *Id.* at 1069.

¶ 22  Further, in *People v. Denton*, 312 Ill. App. 3d 1137, 1139 (2000), the court found that three parked trailers, which were detached from trucks or tractors and were used to store and shelter property, constituted buildings within the meaning of the burglary statute. Following the reasoning in *Ruiz*, the court noted that, although the trailers would later be hauled away in the course of business, at the time the defendant entered them, they were immobile as they were not attached to any vehicles. The court held that because the trailers were being used to shelter

property at the time the defendant entered them, they were "buildings" under the burglary statute. *Id.* Based on the court's determination that the trailers were buildings, it declined to address whether they could also be considered "housetrailers" or "motor vehicles" under the burglary statute. *Id.* at 1139-40.

¶ 23 In this case, similar to the trailers in *Ruiz* and *Denton*, Matos's trailer was used to store and shelter property, specifically, thousands of dollars worth of tools and automobile racing equipment. The 36-foot trailer was parked in an open parking lot, and photographs of the trailer show that it was not connected to any type of truck or tractor. Thus, the trailer was immobile at the time defendant and codefendant entered it. The photographs further show that this rather large trailer, which can be walked into, resembles the same type of trailer one typically sees housing an office on a construction site. Photographs of the inside of the trailer depict numerous cabinets and storage areas and show electrical outlets and light switches on the walls. Based on the record in this case, we find that Matos's trailer was a structure that was designed and used to shelter property, and therefore, it constituted a "building" within the meaning of the burglary statute. Accordingly, the State proved defendant guilty of burglary beyond a reasonable doubt.

¶ 24 For these reasons, we affirm the judgment of the circuit court of Cook County.

¶ 25 Affirmed.