# Illinois Official Reports

## Appellate Court

---

### *People v. Hopkins*, 2020 IL App (1st) 181100

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLIAM HOPKINS, Defendant-Appellant. |
| District & No. | First District, Sixth Division<br>No. 1-18-1100 |
| Filed | July 6, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 17-CR-11871(01); the Hon. Maura Slattery Boyle, Judge, presiding. |
| Judgment | Reversed. |
| Counsel on Appeal | James E. Chadd, Patricia Mysza, and Bridget Geraghty, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, John E. Nowak, and Davor Mitrovic, Assistant State's Attorneys, of counsel), for the People. |
| Panel | PRESIDING JUSTICE MIKVA delivered the judgment of the court, with opinion.<br>Justices Cunningham and Harris concurred in the judgment and opinion. |

**OPINION**

¶ 1     Following a bench trial, defendant William Hopkins was convicted of burglarizing a railroad car and sentenced to 7½ years in prison. On appeal, he argues that (1) the evidence was insufficient to prove him guilty of burglary of a railroad car, (2) he was denied due process when his lawyer did not advise him of his right to be sentenced under the law in effect at the time of sentencing, and (3) he was denied the effective assistance of counsel because his attorney had represented his codefendant on a plea that was entered before Mr. Hopkins was tried, which presented a conflict of interest. Because we find that the evidence was insufficient to prove Mr. Hopkins guilty of burglary of a railroad car, we reverse his conviction outright and need not address the other two issues he raises.

¶ 2                                    I. BACKGROUND

¶ 3     We only discuss those facts relevant to our holding in this case.

¶ 4     Mr. Hopkins and his codefendant, Robert Murphy, were arrested shortly after midnight on August 2, 2017, and charged with burglary of a railroad car pursuant to section 19-1(a) of the Criminal Code of 2012 (Code) (720 ILCS 5/19-1(a) (West 2016)). Mr. Murphy, who is not a party to this appeal, pleaded guilty to an amended charge of theft of goods valued over $500 but less than $10,000, in exchange for a sentence of five years in prison plus one year of mandatory supervised release. Mr. Hopkins proceeded to trial.

¶ 5     The evidence at the bench trial showed that, just before midnight, on August 1, 2017, two men were seen approaching a parked train near 54th and Leavitt Streets by two agents from the CSX railroad police. One agent, Michael Adams, testified at trial that he saw the men climb the embankment and then one "climbed on a platform" and opened the door to an "intermodal container" being transported on the train—explaining that there were two such containers stacked on top of each other and the man opened the top container—while the other stood at the bottom of the embankment. Special Agent (SA) Adams described intermodal shipping containers as "[t]he containers that go in the back of a semitruck. They can be shipped, put on railroad cars, or towed by semis." SA Adams said the man did not step inside the intermodal container but instead reached in and took out boxes that he then tossed to the other man, who in turn tossed the boxes down the embankment. SA Adams called the Chicago Police Department, and then he and his partner approached the two men, shined a flashlight on them, and the men ran. SA Adams testified that all of the boxes removed from the container were recovered.

¶ 6     Mr. Hopkins was found by a responding Chicago police officer a short time later—just after midnight on August 2, 2017—lying halfway under a car in a garage with an open door. Mr. Hopkins was arrested, and SA Adams identified him as the man he had seen standing at the bottom of the embankment.

¶ 7     A Chicago police detective also testified that when he interviewed Mr. Hopkins, Mr. Hopkins said that "he was walking along the train tracks when boxes were suddenly being thrown down to him from up above. He looked into those boxes and saw that they contained feminine products which he had no use for. He was then approached by two people saying that they were police, and he ran." Mr. Hopkins did not testify.

¶ 8     The trial court found Mr. Hopkins guilty of burglary and sentenced him to 7½ years in prison. This appeal followed.

¶ 9                              II. JURISDICTION

¶ 10    Mr. Hopkins was sentenced on April 27, 2018, and timely filed his notice of appeal that same day. We have jurisdiction pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rule 603 (eff. Feb. 6, 2013) and Rule 606 (eff. July 1, 2017), governing criminal appeals and appeals from final judgments in postconviction proceedings.

¶ 11                             III. ANALYSIS

¶ 12    Mr. Hopkins's first argument on appeal is that the evidence was insufficient to prove him guilty of burglarizing a railroad car beyond a reasonable doubt. Because we agree with Mr. Hopkins that theft from an intermodal container is not the burglary of a railroad car, even where, as here, that container happens to, as the State describes it in its brief, bolt onto the railroad car, we reverse his conviction on this basis.

¶ 13    We have repeatedly held that "[w]e will not reverse a conviction unless the evidence is so unreasonable, improbable or unsatisfactory that it raises a reasonable doubt of [the] defendant's guilt." *People v. Evans*, 209 Ill. 2d 194, 209 (2004). Generally, when reviewing the sufficiency of the evidence, "[t]he relevant inquiry is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *People v. Ward*, 215 Ill. 2d 317, 322 (2005). Here, however, Mr. Hopkins is challenging the definition of "railroad car" for purposes of the burglary statute, which is a question of statutory construction and thus subject to *de novo* review. *People v. Lloyd*, 2013 IL 113510, ¶ 25.

¶ 14    The burglary statute provides as follows: "A person commits burglary when without authority he or she knowingly enters or without authority remains within a building, housetrailer, watercraft, aircraft, motor vehicle, railroad car, or any part thereof, with intent to commit therein a felony or theft." 720 ILCS 5/19-1(a) (West 2016).

¶ 15    In construing a statute, our primary objective "is to ascertain and give effect to the intent of the legislature" and the "most reliable indicator of legislative intent is the language of the statute." *People v. Boyce*, 2015 IL 117108, ¶ 15. "In the event there is ambiguity, the rule of lenity requires that it be resolved in a manner that favors the defendant; however, this rule must not be stretched so far as to defeat the legislature's intent." (Internal quotation marks omitted.) *Id.* "In the course of statutory construction, we may consider the reason for the law, the problems sought to be remedied, the purposes to be achieved, and the consequences of construing the statute one way or another." *Id.*

¶ 16    Here, Mr. Hopkins was convicted, based on his accountability for Mr. Murphy's actions, of burglarizing a railroad car, which required the State to prove that "without authority he or she knowingly enter[ed] or without authority remain[ed] within a *** railroad car, or any part thereof, with intent to commit therein a felony or theft." 720 ILCS 5/19-1(a) (West 2016).

¶ 17    The statute does not define the term "railroad car." But when a statute does not define a term, we may turn to a dictionary to ascertain the term's commonly understood meaning. *People v. Beachem*, 229 Ill. 2d 237, 244-45 (2008). The Merriam-Webster dictionary defines

a "car" to include "a vehicle designed to move on rails (as of a railroad)." Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/car (last visited June 29, 2020) [https://perma.cc/KH2Z-ES6S]. We agree with Mr. Hopkins that an intermodal container does not fit within the common definition of a "railroad car" or "any part thereof." It is not a vehicle. As Mr. Hopkins states in his brief: "It has no wheels. It is just a large box that may be moved by a railroad car or by other means of transportation." Nothing in the definition of railroad car or "any part thereof" would encompass a container that is bolted onto a railroad car or, indeed, in Mr. Hopkins's case, a container that sits on top of another container that is bolted onto a railroad car.

¶ 18 Moreover, expanding the definition of railroad car to include an intermodal container that happens to be bolted onto a railroad car does not serve the legislative purpose of the burglary statute. Our supreme court has recognized that "[t]he purpose of the burglary statute is to protect the security and integrity of certain specified enclosures." (Internal quotation marks omitted.) *People v. Beauchamp*, 241 Ill. 2d 1, 8 (2011). As our supreme court emphasized, "[a] burglary is complete upon entering with the requisite intent, irrespective of whether the intended felony or theft is accomplished." *Id.* A railroad car, like a building, motor vehicle, or housetrailer, is one of these specified enclosures that the legislature has found deserving of this security and integrity. An intermodal container is not.

¶ 19 The fact that the intermodal container was bolted onto a railroad car does not extend the "enclosure" of the railroad car to include the container. As we recognized in *People v. Frey*, 126 Ill. App. 3d 484 (1984), the enclosure is defined by the bottom, top, and sides of that enclosure. In *Frey*, the question was whether entry into the open back of a pickup truck qualified as being entry into a "motor vehicle *** or any part thereof." (Internal quotation marks omitted.) *Id.* at 486. The court answered this question in the affirmative and explained that "an unlawful entry may be accomplished by 'breaking the close' defined by the four sides, the bottom, and the imaginary plane extending atop the sides and parallel to the bottom." *Id.* at 487. In this case, in contrast to *Frey*, there was no testimony that any "close" was broken or that there were sides to the railroad car platform or a "plane" that was broken by entering the intermodal container that happened to be bolted onto it.

¶ 20 Even if we found the language of the statute or the legislative intent less clear than we do, based on the rule of lenity, we would read the statute the same way—narrowly, in favor of Mr. Hopkins. As with any penal statute, the burglary statute "must be strictly construed in favor of the accused, and nothing should be taken by intendment or implication beyond the obvious or literal meaning of the statute." *People v. Laubscher*, 183 Ill. 2d 330, 337 (1998).

¶ 21 The State's reliance on *People v. Jones*, 366 Ill. App. 3d 12 (2006), is misplaced. In *Jones*, we considered whether a semitrailer should be considered a motor vehicle or "any part thereof" under the burglary statute. *Id.* at 17. We noted that the semitrailer was designed to be connected to a "truck tractor" and that a semitrailer and truck tractor "are designed to work as one vehicle when connected." *Id.* at 18. Although we acknowledged that a semitrailer was "not capable of self-propulsion," it was nonetheless designed "to be a part of a motor vehicle" and "does not automatically lose its design and function when it is detached from a motor vehicle." Here, in contrast, none of the evidence suggests that an intermodal container is designed to be a part of a railroad car. As SA Adams testified, these containers "can be shipped, put on railroad cars, or towed by semis." It would be a significant expansion of the reach of the burglary statute to

suggest that it also encompasses containers that are not designed to be any part of a railroad car but can be used to transport goods in a variety of ways.

¶ 22 We also reject the State's argument that "advancements in transportation" require us to accept its expansive view of the reach of the burglary statute. If, as the State appears to suggest, intermodal containers are the way that modern merchandise is transported and railroad cars are a thing of the past, the legislature has the power to amend the statute. We, on the other hand, have no power to find something by "intendment or implication beyond the obvious or literal meaning of the statute." *Laubscher*, 183 Ill. 2d at 337.

¶ 23 The State does not suggest that if we agree with Mr. Hopkins that the conduct at issue here is outside of the reach of the burglary statute, we should remand for sentencing on any lesser included offense. Therefore, we reverse his conviction outright.

¶ 24 Because we are reversing Mr. Hopkins's conviction, we need not reach the other two issues he raises in this appeal.

¶ 25 IV. CONCLUSION

¶ 26 For the foregoing reasons, we reverse Mr. Hopkins's burglary conviction.

¶ 27 Reversed.