*In re* E. S., a Minor.—(THE PEOPLE OF THE STATE OF ILLINOIS,
Petitioner-Appellee, *v.* E. S., Respondent-Appellant.)

Second District    No. 79-651

Opinion filed February 13, 1981.

Mary Robinson, of State Appellate Defender's Office, of Elgin, for appellant.

Gene Armentrout, State's Attorney, of Geneva (Phyllis J. Perko and Barbara A. Preiner, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE UNVERZAGT delivered the opinion of the court:

In this appeal we consider a matter of first impression in Illinois: whether a fenced-in area may be construed to be included in the term "building" within the meaning of the burglary statute. (Ill. Rev. Stat. 1979, ch. 38, par. 19—1.) We hold that it may not, and vacate the orders revoking the minor's probation and committing him to the Department of Corrections.

The minor was adjudicated a delinquent and ward of the court on July 10, 1978, after a hearing on a petition for adjudication charging him with a robbery on May 23, 1978. Four petitions to revoke probation were subsequently filed. The dispositions of the first two petitions are unknown; there was a no-probable-cause finding as to the third petition; the fourth petition resulted in revocation of the minor's probation, and he was sentenced to the Department of Corrections.

The minor raised two issues on appeal. The first issue regarding the definiteness of his term of probation was waived by his appellate counsel during oral argument before this court. The second issue raised is the subject of this opinion.

The record disclosed that the fourth petition for revocation of probation charged the minor failed to comply with the terms of his probation

in that on June 13, 1979, he knowingly and without authority entered the property of the Dundee Avenue Auto Body Shop in Elgin with the intent to commit a theft therein. At the hearing on the petition, the State's evidence showed the minor was apprehended at approximately 11:15 p.m. on June 13, 1979, in the lot of the Dundee Avenue Auto Body Shop in Elgin. The shop had been closed sometime between 5 and 8 p.m. earlier that evening. The minor was observed in one of the cars on the lot when an officer responding to a "burglary in progress" call at that location saw a beam from a flashlight and saw the minor duck down inside the car. The lot was at the front of the shop, which was itself set back from the street about 60 feet. A 10-foot-high fence with a large sliding gate at the front enclosed the lot and abutted the shop building on its north and south sides. A car compass, apparently broken off from a bracket, was discovered on the minor's person following a pat-down search. Three cars on the lot appeared to have been ransacked, *i.e.*, the contents of the glove compartments had been strewn around inside the cars. The cars on the lot were not owned by the auto body shop, but were apparently on the lot because they were to be repaired at the shop.

The minor argues that the fenced-in lot was not contemplated by the burglary statute as susceptible to being burglarized and, therefore, the State's evidence failed to prove him guilty of burglary. The minor points out that Illinois courts have had occasion to interpret the scope of the phrase "building, * * * or any part thereof * * *" (Ill. Rev. Stat. 1979, ch. 38, par. 19—1) in several different contexts, but in no instance has the property involved been similar to that of the instant case, and the precise question at issue here has not heretofore been addressed. In *Gillock v. People* (1898), 171 Ill. 307, a chicken house was held to be a building within the meaning of a burglary statute which precluded unlawful entry into "* * * any dwelling house, kitchen, office, shop, storehouse, warehouse, malt-house, stilling-house, mill, pottery, factory, wharf-boat, steamboat or other water craft, freight or passenger railroad car, church, meeting house, school house or other building * * *." (*Gillock*, at 308.) The court in *Bruen v. People* (1903), 206 Ill. 417, 423, noted:

> "A building has been defined to be 'a fabric or edifice constructed for use or convenience; as a house, a church, a shop. It must be permanent and designed for the habitation of men or animals, or the shelter of property.' (2 Am. & Eng. Ency. of Law,—1st ed.—p. 601)."

A partially built toolshed comprised of a roof and one wall and which was used to store property was found to be a structure designed for the shelter of property and, thus, a building *People v. Gillespie* (1931), 344 Ill. 290, 294. As stated therein:

> "A building, within this act, has been defined as a fabric, struc-

ture or edifice, such as a house, church, shop or the like, designed for the habitation of men or animals or for the shelter of property; a structure."

Cases subsequent to *Bruen* and *Gillespie* have found the following edifices constituted a "building": a car wash with wash stalls open at each end, concrete walls on two sides, a concrete floor, and a roof (*People v. Blair* (1972), 52 Ill. 2d 371); a telephone booth (*People v. Embry* (1973), 12 Ill. App. 3d 332; *People v. Borneman* (1966), 66 Ill. App. 2d 251); and a tent (*People v. Netznik* (1978), 66 Ill. App. 3d 72). It is evident that the common elements in all of these cases were a roof and at least one wall that would provide some shelter ·from the elements for persons or property.

The minor notes that in the jurisdictions that have considered a fenced lot to be a potential subject of a burglary, each had a statute that was explicitly more inclusive than Illinois had. For instance, unlawful entry was prohibited to (1) an "enclosed commercial yard used for storing equipment or supplies" (*State v. Patterson* (1973), 21 Ariz. App. 136, 516 P.2d 1231); (2) an "inclosure" (*Jenkins v. State* (Del. 1967), 230 A.2d 262, 275); (3) a building "or other structure" (*State v. Roadhs* (1967), 71 Wash. 2d 705, 430 P.2d 586); and (4) any building or any part of a building "or other structure or erection." *Stanley v. State* (Okla. 1973), 512 P.2d 829.

The minor urges that since Illinois does not grade its burglary statute and has only one degree of burglary, any expansion in the interpretation of the offense to include the entry into a fenced yard would be unwarranted and would surely invite unnecessarily severe and arbitrary results. The minor points out that in the four jurisdictions noted above whose statutes more explicitly prohibit entry into a fenced area, in no instance was the offense prosecuted as first-degree burglary.

Finally, the minor notes that affording the term "building" in the burglary statute its commonly understood meaning and applying the precedent of the prior Illinois cases in the instant cause would not result in a prosecution-proof offense. It would likely necessitate, however, an alternate avenue of prosecution such as theft or burglary of the automobile.

The State argues that the fenced lot in the case at bar was an integral part of the body shop and should be construed to be a part of a "building" within the meaning of the burglary statute. The State contends that the cases construing the term "building" simply require that the structure be designed for the shelter of property, and that the structure need not be roofed. The State posits that the fence in the case at bar abutted the building and its physical dimensions indicate it was meant to protect the vehicles entrusted to the body shop from damage or theft. Because the fenced-in lot was essential to the operation of the body shop, it served as

an extension of the shop. Conceding that a fenced lot standing alone might not be susceptible to being burglarized within the meaning of the statute, the State nevertheless urges that the lot in this case should be held to be a part of the body shop building and that revocation of the minor's probation should be affirmed.

We are persuaded by the minor's argument that the fenced-in lot is not encompassed within the meaning of the word "building," and we vacate the revocation of the probation and commitment orders. Our decision is based primarily on the judicial construction heretofore afforded by Illinois courts to the term "building" within the meaning of the burglary statute. We find further support in the ordinary meaning of the terms "building" and "shelter." A building "is anything that is built with walls and a roof * * *." (Webster's Second College Edition New World Dictionary 185 (1972).) A shelter is "something that covers, protects, or defends; * * * shelter implies the protection of something that covers, as a roof or other structure that shields one from the elements, danger, etc." Webster's Second College Edition New World Dictionary 1312 (1972).

Although the Illinois cases do not specifically require protection from the elements as such, nor specifically require a roof, we think the essence of the cases is that the area prohibited from entry must be of a nature that would reasonably fall within the commonly accepted meaning of the terms "building" or "shelter" which is used to protect either persons or property or both. We do not believe that the fenced-in lot in the instant cause reasonably falls within the meaning of either of these terms, despite its peculiarly and arguably integral relation to the body shop under the facts of this case. We are disinclined to invite by a contrary finding any future potential extension and/or mutation of the burglary statute to include ordinary fenced areas. Were such extensions appropriate, the appropriate forum would be the legislature and not the courts.

The judgment of the circuit court of Kane County is vacated.

Judgment vacated.

LINDBERG and VAN DEUSEN, JJ., concur.