STATE of Missouri, Respondent,

v.

Roger B. ASHBY, Appellant.

No. ED 94036.

Missouri Court of Appeals, Eastern District, Division Three.

April 12, 2011.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 24, 2011.

Application for Transfer Denied June 28, 2011.

Alexa I. Pearson, Columbia, MO, for Appellant.

Chris Koster, Atty. Gen., John M. Reeves, Jefferson City, MO, for Respondent.

## ORDER

CLIFFORD H. AHRENS, Judge.

Roger Ashby ("Defendant") appeals from the judgment of the trial court entered after a jury convicted him of second-degree burglary, a felony, and misdemeanor stealing and resisting arrest. Defendant contends that the trial court erred when it denied his motion to suppress evidence collected in a warrantless vehicle search by police officers after he gave verbal consent. He also contends that the trial court erred when it denied his motions for acquittal on the charge of second-degree burglary because the structure that Defendant entered did not constitute a "building" as required by the statute. Finding no error, we affirm.

## BACKGROUND

Shortly after 8:00 p.m. on October 21, 2008, as two students left their apartment, they observed Defendant in dark clothing

stacking PVC plumbing pipe behind a dumpster at an apartment complex construction site. The students saw Defendant enter the complex with a flashlight and leave holding a strand of yellow electrical wire. Defendant put the wire into the front passenger-side door of a white van marked "Drain Doctor." One student then called the police. Officer Zeidler responded to the call, parked his vehicle near the van, and exited his patrol unit. Upon seeing the officer, Defendant began to walk away, toward some nearby houses. Officer Zeidler instructed him to stop, at which point Defendant ran. Officer Zeidler pursued Defendant on foot until losing sight of him and then radioed for a K–9 unit to assist.

Officer Rahn and his K–9 unit, Bolo, responded to the call. Bolo led the officers to a nearby residence. Officer Zeidler encountered Defendant in the backyard and chased him toward the front yard. As Defendant reached the front of the house, Officer Rahn ordered him to stop or he would release Bolo. Defendant surrendered.

Officer Walker also responded to the call for assistance and was at the scene. After Officer Rahn took Defendant into custody, Officer Walker read him his *Miranda*[1] rights and Defendant stated that he wanted to speak to his lawyer. Officer Walker then transported Defendant to the police station. On the way to the station, without being questioned, Defendant told Officer Walker that he stopped his van to use the porta-potty and ran after he saw Officer Zeidler because he "did not want to be accused of anything." Officer Walker asked for consent to search his van, and Defendant gave his consent. Nobody else heard Defendant's consent and Officer Walker did not have her personal recording device on her at the time. Additionally, Officer Walker asked for Defendant's

keys so that police could tow the van. Defendant gave her the keys.

When Officer Walker returned to the scene, a number of officers were standing around the van. Officer Walker could see yellow wiring on the passenger floorboard through the passenger-side window. After opening the van, officers determined that the vehicle should be towed and inventory searched at police headquarters. A subsequent search revealed yellow wiring and plumbing piping on the passenger floorboard.

The State charged Defendant with second-degree burglary, stealing, and resisting arrest. The jury found Defendant guilty on all three counts. The trial court sentenced Defendant as a persistent offender to eight years. Defendant appeals, arguing that the trial court erred when it denied his motion to suppress evidence collected after he verbally consented to a vehicle search because his consent was involuntary. Additionally, Defendant contends that the trial court erred when it denied his motion for judgment of acquittal on second-degree burglary because the apartment complex did not constitute a "building" as required by statute.

## STANDARD OF REVIEW

▮ The trial court's ruling on a motion to suppress evidence will be affirmed unless it is clearly erroneous. *State v. Boykins,* 306 S.W.3d 626, 627 (Mo.App. 2010). If the ruling is plausible, in light of the record viewed in its entirety, we will not reverse even if convinced we would have weighed the evidence differently. *Id.* We review the factual findings only to determine if they are supported by substantial evidence, viewing the facts in the light most favorable to the trial court's ruling and disregarding contrary evidence

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

and inferences. *Id.* Whether conduct violates the Fourth Amendment is an issue of law that this Court reviews *de novo. State v. Ross,* 254 S.W.3d 267, 273 (Mo.App. 2008).

When reviewing the sufficiency of the evidence supporting a criminal conviction, the Court gives great deference to the trier of fact. *State v. Moore,* 303 S.W.3d 515, 519 (Mo. banc 2010). The Court is limited to whether the State has introduced sufficient evidence for any reasonable juror to have been convinced of guilt beyond a reasonable doubt. *State v. Bateman,* 318 S.W.3d 681, 686–87 (Mo. banc 2010). On review the Court accepts as true all of the evidence favorable to the state, including all favorable inferences drawn from the evidence and disregards all evidence and inferences to the contrary. *Id.* at 687. Statutory interpretation is an issue that Courts review *de novo* as a matter of law. *Delta Air Lines v. Dir. of Revenue,* 908 S.W.2d 353, 355 (Mo. banc 1995).

## DISCUSSION

In his first point relied on, Defendant argues that the trial court erred when it denied his motion to suppress a roll of yellow electrical wire, a PVC cement can, and PVC piping that officers found in his van, in addition to photographs and testimony regarding this evidence. Defendant contends that his alleged consent was invalid because it occurred after he invoked his right to remain silent and after he was taken into custody. In essence, Defendant claims that his verbal consent was involuntary.

Generally, searches conducted without a search warrant are unreasonable and violate a defendant's Fourth Amendment rights. *State v. Mathis,* 204 S.W.3d 247, 258 (Mo.App.2006). However, there are exceptions to this general rule, including the consensual search exception. *Id.*

To be valid, consent must be given voluntarily. *Id.* Consent is freely and voluntarily given if, considering the totality of the circumstances, the objective observer would conclude that the person giving consent made a free and unconstrained choice to do so. *Id.* The Court will consider a number of factors, including, but not limited to, the number of officers present, the degree to which they emphasized their authority, whether weapons were displayed, whether the person was already in custody, whether there was any fraud on the part of the officers, and the evidence of what was said and done by the person consenting. *State v. Reese,* 625 S.W.2d 130, 132 (Mo. banc 1981); *Mathis,* 204 S.W.3d at 258.

The evidence before the trial court established that Defendant gave Officer Walker consent to search his van. Officer Walker read Defendant his *Miranda* rights and he summarily invoked his right to an attorney. Officer Walker, alone, then transported Defendant to the police station. During the ride to the police station, Defendant, *sua sponte,* broke his vow of silence and described the evening's events. It was then that Officer Walker asked for consent to search Defendant's van. There is no evidence indicating that Officer Walker emphasized her authority, displayed a weapon, or perpetrated a fraud to gain Defendant's consent. Although Defendant argues that he was chased by officers, threatened by a K–9 unit, detained, arrested, and "caged" in a police car, his argument is without merit. These are the consequences most associated with evading police. Defendant asks the Court to invalidate his post-arrest consent, an illogical resolution. The evidence supports the trial court's finding that Defendant freely and voluntarily consented to his van's search. Point denied.

In his second point relied on, Defendant contends that the trial court erred when it denied his motion for judgment of acquittal of second-degree burglary because the unfinished apartment complex was not a "building" as prescribed by statute.[2] Defendant contends that the complex was not a "building" since it was only twenty-five to thirty percent complete, some of its windows and doors were not installed, and it was left open and unsecured.

When interpreting a statute, the primary goal is to give effect to legislative intent as reflected in the plain language of the statute. *Moore*, 303 S.W.3d at 520. The court must give meaning to every word or phrase of the legislative enactment. *Id.* In the absence of a statutory definition, words will be given their plain and ordinary meaning as derived from the dictionary. *State v. Oliver*, 293 S.W.3d 437, 446 (Mo. banc 2009).

This is a case of first impression in Missouri. Section 569.010 does not define the term "building." In *State v. Washington*, the issue before the court was whether an attached garage was an inhabitable structure under the second-degree burglary statute. 92 S.W.3d 205, 210–11 (Mo. App.2002). The court found insufficient evidence for that determination and instead analyzed whether the garage was a building. *Id.* The court defined a "building" as:

> a constructed edifice designed to stand more or less permanently, covering a space of land, usu. covered by a roof and more or less completely enclosed by walls, and serving as a dwelling, storehouse, factory, shelter for animals, or other useful structure-distinguished from structures not designed for occupancy (as fences or monuments) and from structures not intended for use in one place (as boats or trailers) even though subject to occupancy ...

*Id.* at 210–11 (*citing* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE 292 (1971)). The Western District held that the garage was indeed a building. However, it did not address the issue of whether a structure that was still in the process of construction constitutes a "building" for purposes of § 569.170.

Black's Law Dictionary (9th ed.2009) defines a "building" as "a structure with walls and a roof, [especially] a permanent structure." Further, 12A C.J.S. Burglary, § 41, states that the term "building" as used in burglary statutes, encompasses "any structure which is of such a character as to fall within the ordinary acceptation of that term, and which is capable of sheltering people, or animals, or property, whether or not the building is entirely finished." 13 Am.Jur.2d, Burglary, § 6 (2009) notes that structures that fall within the statutory definition of "dwelling houses" for purpose of burglary include homes under construction. In Missouri, an apartment is a "dwelling house," *State v. Parker*, 501 S.W.2d 3, 6 (Mo.1973).

Other jurisdictions have addressed this issue, and we find their analysis instructive. In *State v. Storey*, the Supreme Court of Kansas held that an unfinished medical center consisting of a roof, concrete floor, electrical wiring, four walls and openings for windows and doors yet-to-be installed was a building. 286 Kan. 7, 179 P.3d 1137, 1139 (2008). The Kansas burglary statute, in relevant part, requires entrance into "any building, manufactured

---

**2.** A person commits the crime of burglary in the second degree when he knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure for the purpose of committing a crime therein. Section 569.170 RSMo 2000. Unless noted otherwise, all further statutory citations are to RSMo 2000.

home, mobile home, tent or other structure which is not a dwelling ..." K.S.A. 21–3715. The court found no legislative definition for "building" and instead relied on the statute's plain-meaning, which suggested no enclosure requirement. *Storey*, 179 P.3d, at 1141. Additionally, the court found the statute's use of the word "any" persuasive, in that it intended to cover all types of buildings. *Id.* Lastly, the court analyzed many of the cases cited herein to find that the unfinished medical center constituted a building. *Id.* at 1143.

The Court of Appeals of Georgia applied similar rationale in *Smith v. State*, 226 Ga.App. 9, 485 S.E.2d 572 (1997). In *Smith*, the court held that an unfinished house that had a roof, walls, windows and some vinyl siding was a building. *Id.* at 573. All of the doors had been installed with the exception of the garage door and the door inside the garage that led into the house. *Id.* The Georgia burglary statute did not define a "building." After surveying other jurisdictions, the court found "that a 'building' does not necessarily mean a structure so far completed as to be in all respects fit for the purpose for which it was intended." *Id.* at 574. Rather, it only need be complete enough "that it may be used for shelter" of man, animal, or property. *Id.* Finally, the court found the word "any" before "building" meant that the statute should apply to all buildings no matter the kind. *Id.*

In New York, the Appellate Division held that a townhouse in need of windows, a skylight, and interior work was a building. *People v. Angel*, 178 A.D.2d 419, 577 N.Y.S.2d 116 (N.Y.App.Div.1991). New York defines "building" "in addition to its ordinary meaning, [it] includes any structure, vehicle, or watercraft used for overnight lodging ..." Penal § 140.00(2). The court said that the townhouse clearly satisfied the definition of a building. *Angel*, 178 A.D.2d 419, 577 N.Y.S.2d 116.

California courts take a broad approach to the definition of "building." In *People v. Brooks*, the court held that a loading dock with two chain-link fence "walls" was a building under its burglary statute. 133 Cal.App.3d 200, 183 Cal.Rptr. 773, 774 (Cal.App.Ct.1982). The court said that a building need only have "four sides and a roof" and that there was no legislative intent to "limit the word 'building' to anything less than its broadest meaning." *Id.* at 775.

In contrast, several jurisdictions have opined that some structures do not meet the definition of a "building." The Illinois Court of Appeals held that a fenced-in lot adjacent to a car repair shop did not meet the definition. *In Interest of E.S.*, 93 Ill. App.3d 171, 48 Ill.Dec. 711, 416 N.E.2d 1233, 1235 (1981). Moreover, a demolished structure without a roof or walls failed to meet Wyoming's requirements for a building. *State v. Crouse*, 69 Wyo. 85, 237 P.2d 481, 484–85 (1951). Even a metal toolbox avoided California's meticulous eye. *People v. Knight*, 204 Cal.App.3d 1420, 252 Cal.Rptr. 17, 20 (1988).

A plain reading of § 569.170 necessitates that the unfinished apartment complex was a "building" within the meaning of the statute. Consistent with legislative purposes, Missouri courts have interpreted the terms "building" and "inhabitable structures" broadly. *State v. Bowman*, 311 S.W.3d 341, 347 (Mo.App.2010). Although § 569.170 refers to "a building" rather than "any building," we find the lack of restrictions in the statute compelling. Section 569.170 is inclusive, given that in addition to "a building" it also includes "an inhabitable structure." Distinguished from "an inhabitable structure", a "building" incorporates structures neither ready for, nor intended as, a dwelling.

Here, Defendant argues that the apartment complex was not a "building" be-

cause it was not complete, some of its windows and doors were not installed, and it was left open and unsecured. We find this argument without merit. The complex's entire exterior had been constructed. It had walls, a roof, and some doors and windows. More or less, the building was closed in. The complex could provide sufficient shelter. It was certainly permanent. Whether or not the structure was complete is not dispositive. The structure meets the definition of a "building." Point denied.

## CONCLUSION

The judgment of the trial court is affirmed.

SHERRI B. SULLIVAN, P.J., concurs.

LAWRENCE E. MOONEY, J., dissents.

LAWRENCE E. MOONEY, Judge.

Missouri has no criminal statute defining what constitutes a "building."

Missouri has but a single case defining "building" as used in the current burglary statute. "Building" is defined as:

a constructed edifice designed to stand more or less permanently, covering a space of land, usu. covered by a roof and more or less completely enclosed by walls, *and serving as a dwelling,* storehouse, factory, shelter for animals, or other useful structure—distinguished from structures not designed for occupancy (as fences or monuments) and from structures not intended for use in one place (as boats or trailers) even though subject to occupancy....

*State v. Washington,* 92 S.W.3d 205, 210–11 (Mo.App. W.D.2002) (citing WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE 292 (1971)(italics supplied)). Obviously, because the italicized words make plain that the instant structure must be "serving as a dwelling," this structure does not yet qualify as a "building."

It is theorized that the burglary statute is "inclusive" because the statute uses both "inhabitable structure" and "building." This theory then announces that the statute is meant to include structures that are not ready for dwelling, as well as structures not intended as dwellings. I agree that the term "building" is intended to embrace a structure not intended as a dwelling. But I do not conclude that the term "building" is intended to include a dwelling structure not ready for habitation. And I would not interpret this criminal statute as "inclusive" given its "lack of restrictions."

Missouri has long applied the rule of lenity. It instructs that criminal statutes should not be extended by judicial interpretation so as to embrace persons and acts not specifically and unambiguously brought within its terms. *State v. Lloyd,* 320 Mo. 236, 7 S.W.2d 344, 346 (1928). It requires that criminal statutes be strictly construed against the State and in favor of the defendant. *See Goings v. Missouri Dept. of Corrections,* 6 S.W.3d 906, 908 (Mo. banc 1999). Indeed, the Missouri Supreme Court has applied the rule of lenity for over a century—such as it did to disallow an expansive use of the term "building" in the prosecution of burglary. *State v. Schuchmann,* 133 Mo. 111, 33 S.W. 35 (1895).

Thus, I would reverse the burglary conviction. I respectfully dissent.