[No. F061645. Fifth Dist. May 11, 2012.]

THE PEOPLE, Plaintiff and Respondent, v.
PABLO MENDOZA CHAVEZ, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II. and III. of the Discussion.

**COUNSEL**

William I. Parks, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Catherine Tennant Nieto, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**WISEMAN, Acting P. J.**—In connection with two separate incidents, defendant Pablo Mendoza Chavez was convicted of burglary, receipt of stolen property, conspiracy to commit burglary, theft with a prior theft conviction, and possession of burglary tools. The conviction of conspiracy to commit burglary was based on the entry of a coconspirator into a fenced wrecking yard to steal gasoline from a junk car.

Burglary requires entry into a building, but the jury was instructed that entry into the yard was sufficient. Although our Supreme Court has defined "building" broadly for purposes of burglary, it has still generally limited the meaning of "building" to a structure with walls and a roof. We know of no California case that has gone so far as to hold that a fenced yard surrounding a building is itself a building or part of a building, and case law from other states in which a burglar must enter a "building" in the ordinary sense, without a special statutory definition, rejects the view that a fenced yard can be burglarized. The plain meaning of the word "building" also does not include a fenced yard. Therefore, in the published portion of this opinion, we reverse the conviction of conspiracy to commit burglary. This will reduce Chavez's sentence to nine years from nine years eight months.

Chavez's sentence included prior-prison-term enhancements pursuant to Penal Code section 667.5, subdivision (b).[1] The court stayed some of these enhancements pursuant to section 654. Chavez contends, and the People concede, that it was error to stay these enhancements, because case law holds that section 667.5, subdivision (b), enhancements must be either imposed or stricken. We remand to allow the court to exercise its discretion either to strike or to impose the enhancements.

Chavez also argues that his trial counsel provided ineffective assistance in violation of the Sixth Amendment for several reasons. We reject these contentions.

### *FACTUAL AND PROCEDURAL HISTORIES*

Early in the morning of May 1, 2010, Lemoore police officers saw a pickup truck parked across the street from Economy Auto Wrecking, an auto salvage yard. They saw a man run from the entrance of the yard to the truck.

---

[1] Subsequent statutory references are to the Penal Code unless otherwise indicated.

Then they saw another man jump over the yard's fence from the inside and go to the truck. The officers approached and found Chavez in the driver's seat and Jeremiah Phillips in the passenger seat. Phillips was the one who had been seen jumping over the fence from the inside.

Near the front entrance of the wrecking yard, outside the fence, the officers found three cans filled with gasoline and a siphoning hose. They arrested the two men and contacted the owner of the wrecking yard, who said Chavez and Phillips did not have permission to be on the property. The officers searched the truck and found bolt cutters, tin snips, wirecutters, drills, flashlights, pliers, gloves, and an empty gasoline can. They also searched the men. Chavez had pliers, wrenches, and screwdrivers in his pockets. Phillips admitted to the officers that he and Chavez agreed to go to the yard to steal gasoline from a car there. Chavez apologized to the officers and said he was being stupid and needed the gasoline to get home. Later, Phillips testified that Chavez took the full cans when Phillips passed them over the fence, but Chavez did not agree to steal; the stealing was Phillips's idea alone and he had lied to Chavez to gain his cooperation, telling him a friend was a guard there and he had permission.

The wrecking yard consisted of a fenced area with a building inside. Some of the fence was chain link and some solid.[2]

On July 6, 2010, while Chavez was out on bail for the May 1 arrest, a motorcycle was stolen from the garage of Russell Brookshier near Hanford. Douglas Haddon, Chavez's friend, was arrested after burglarizing another home the following morning, and he implicated himself and Chavez in the theft of the motorcycle and also in the theft of a pickup truck. Police went to Chavez's apartment building the next day and found the missing motorcycle on the property, partially covered by a tarp. Chavez denied involvement in the theft, but said his fingerprints would be on the motorcycle because he had moved it so he could get through a gate. A barrel and a crate that had been in the stolen pickup truck were found near the motorcycle.

---

[2] The People's appellate brief states that the "wrecking yard consisted of a building and an area enclosed on one side by the wall of the building and on the remaining three sides by chain-link fences." The photographs in the record the People cite, however, do not show that an entire side of the yard was enclosed by the side of the building. They only show a solid surface and a chain-link fence. The solid surface could be either part of a building or part of a solid fence, and nothing shows that the solid surface enclosed an entire side of the yard. So far as the record discloses, the wrecking yard was simply a fenced yard with a building and a collection of junk cars inside the fence.

For the May 1, 2010, crimes at the wrecking yard, the district attorney filed an information in case No. 10CM1221. Count 1 charged a conspiracy to commit second degree burglary. (§§ 182, subd. (a)(1), 459.) Count 2 charged theft with prior theft convictions. (§ 666.) Count 3 charged misdemeanor possession of burglary tools. Three prior convictions were alleged to support the theft-with-priors charge. Two of these prior convictions were also alleged for purposes of sentence enhancement on counts 1 and 2 pursuant to section 667.5, subdivision (b).

For the July 6, 2010, crimes involving the motorcycle, the district attorney filed an information in case No. 10CM1922. Count 1 was burglary of the home of the owner of the motorcycle. (§ 459.) Count 2 was unlawful taking of the motorcycle (Veh. Code, § 10851, subd. (a)), but this count was stricken at the prosecutor's request during trial. Count 3 was receiving the stolen motorcycle. (§ 496d.) Two prior offenses were again alleged for purposes of sentence enhancement pursuant to section 667.5, subdivision (b). The information also alleged that Chavez was released on bail in the other case when he committed these offenses. The two cases were consolidated for trial.

The jury found Chavez guilty of all counts, found there was a person present during the residential burglary, and found the on-bail enhancement true.[3] Chavez admitted all the prior offenses.

At the sentencing hearing, the court deemed case No. 10CM1922 the principal case. For the burglary, it imposed the upper term of six years, plus one year for the section 667.5, subdivision (b), enhancement. It also imposed a two-year term for the on-bail enhancement. For receiving the stolen motorcycle, the court imposed the upper term of three years, plus one year for the section 667.5, subdivision (b), enhancement, all stayed pursuant to section 654. In case No. 10CM1221, the court imposed a term of eight months, equal to one-third of the middle term, for conspiracy to commit burglary. For theft with prior thefts, the court also imposed a term of eight months, equal to one-third of the middle term, and stayed it pursuant to section 654. For possession of burglary tools, the court imposed 180 days, to be served concurrently. It imposed terms of two years for the section 667.5,

---

[3] For count 2 in case No. 10CM1221, the jury did not actually find Chavez guilty of violating section 666, theft with a prior theft. The jury instructions and the verdict form referred instead to simple theft, section 484. To support the prior-offense element, the court obtained Chavez's admission to the priors. This admission was not disclosed to the jury, however, to avoid prejudice. In effect, when the court entered a judgment of conviction on a section 666 charge, it joined the jury's finding of theft with Chavez's admission of priors to establish an offense other than the offense the jury found. This procedure was undertaken with defense counsel's and defendant's consent, and there is no claim on appeal that it was improper.

subdivision (b), enhancements, and stayed them pursuant to section 654. The total term to be served was nine years eight months.

## *DISCUSSION*

### I.   *Conspiracy to commit burglary*

■   To be guilty of conspiracy to commit burglary, Chavez had to agree to commit a burglary and he or his coconspirator had to take an overt step in furtherance of the agreement. (*People v. Jurado* (2006) 38 Cal.4th 72, 120 [41 Cal.Rptr.3d 319, 131 P.3d 400].) For the overt-step element, the information alleged that Chavez and Phillips drove to the wrecking yard and went into the wrecking yard. In explaining burglary for purposes of the conspiracy charge, the court instructed the jury that entry into the wrecking yard with intent to commit theft would be a burglary.

There was evidence that Chavez and Phillips agreed to steal gasoline from a car in the yard. There also was evidence that Phillips entered the fenced area and stole gasoline from a junk car there, and that Chavez was near the fenced area and helped carry the stolen gasoline away. There was no evidence, however, that Chavez or Phillips entered the shop building or agreed to do so. The only entry and the only conspiracy to enter that could have supported the burglary conspiracy charge involved the fenced yard. Chavez argues that, under these circumstances, he could not be guilty of conspiracy to commit burglary because there was no evidence of an agreement to enter or of an overt step toward entering a *building*. We agree.

■   Section 459 specifies that a burglary can be committed through entry of many enumerated types of structures and vehicles and adds a catchall for other buildings: "Every person who enters any house, room, apartment, tenement, shop, warehouse, store, mill, barn, stable, outhouse *or other building*, tent, vessel, as defined . . . , floating home, as defined . . . , railroad car, locked or sealed cargo container, whether or not mounted on a vehicle, trailer coach, as defined . . . , any house car, as defined . . . , inhabited camper, as defined . . . , vehicle as defined . . . , when the doors are locked, aircraft as defined . . . , or mine or any underground portion thereof, with intent to commit grand or petit larceny or any felony is guilty of burglary." (Italics added.)

The California Supreme Court stated in *People v. Gibbons* (1928) 206 Cal. 112 [273 P. 32] (*Gibbons*) that a "building" for purposes of burglary means a structure with four walls and a roof. In that case, aluminum was stolen from a "bin" six or eight feet high, " 'having three sides and a roof,' " with the roof being the floor of a building above the bin and the fourth side opening onto a

fenced yard. (*Id.* at p. 113.) The court held that there was no burglary because, " 'as said in *People* v. *Coffee* [(1921) 52 Cal.App. 118 [198 P. 213]], the structure need . . . be one having four sides and a roof,[']" and the "bin in question being open on one side does not measure up to that definition." (*Id.* at p. 114.)

Sixty years before *Gibbons*, when the burglary statute referred not to any "other building" but to any "other house," our Supreme Court had already established the same rule. It interpreted "house" to mean "building," and defined a building as that which has four walls and a roof. It stated that " 'any other house' " includes "every kind of buildings or structures 'housed in' or roofed . . . . A house, in the sense of the statute, is any structure which has walls on all sides and is covered by a roof." (*People v. Stickman* (1867) 34 Cal. 242, 245.)

■ The Courts of Appeal have cited and applied this definition often. (*People v. Labaer* (2001) 88 Cal.App.4th 289, 296 [105 Cal.Rptr.2d 629] [under burglary statute, "a building is generally defined to mean a place that has walls on all sides and is covered by a roof" but notion of walls and roof is expansive; partially dismantled mobilehome with plastic sheeting for walls and half of roof removed satisfied definition]; *In re Amber S.* (1995) 33 Cal.App.4th 185, 186–187 [39 Cal.Rptr.2d 672] ["open pole barn" consisting of roof supported on poles with no walls was not building under burglary statute because it lacked walls; minor "was charged with the wrong offense"]; *People v. Brooks* (1982) 133 Cal.App.3d 200, 204–206, 207–208 [183 Cal.Rptr. 773] (*Brooks*) [loading dock attached to back of store was building under *Gibbons* definition because it had roof, two solid walls, and two walls made of chainlink fence and tin; it also was integral part of store building]; *In re Christopher J.* (1980) 102 Cal.App.3d 76, 78–79 [162 Cal.Rptr. 147] (*Christopher J.*) [carport with roof, wall on one side, half wall on another side, and open on two sides could be burglarized even if it did not itself satisfy the *Gibbons* definition because it was integral part of house to which it was attached]; *People v. Nunez* (1970) 7 Cal.App.3d 655, 657, fn. 1 [86 Cal.Rptr. 707] [telephone booth with three walls, door enclosing fourth side, and roof was building for purposes of burglary]; *People v. Burley* (1938) 26 Cal.App.2d 213, 214 [79 P.2d 148] [popcorn stand measuring 8 by 10 by 7 feet, mounted on wheels, and having four walls and roof was building within meaning of burglary statute].) Although we have found no California burglary case addressing a fenced yard, it would seem to follow inevitably from these cases that a fenced yard is not a building because it does not have a roof.

The out-of-state cases we found in which the burglary statute requires entry into a building, and in which there is no special statutory definition of "building" that encompasses a fenced yard, uniformly state that an uncovered

fenced yard is not a building. Some of these cases hold that a fenced yard is not subject to burglary even though the statute contains terms in addition to "building" under which a fenced yard arguably could be subsumed. (*State v. Alexander* (La. 1977) 353 So.2d 716, 718 [fenced wrecking yard is neither "building" nor "structure" within meaning of statute]; *Day v. State* (Tex.Crim.App. 1976) 534 S.W.2d 681, 683–685 [fenced lumberyard and cement block structure inside with three wide doorways that could not be closed were not buildings for purposes of burglary]; *In Interest of E.S.* (1981) 93 Ill.App.3d 171 [48 Ill.Dec. 711, 416 N.E.2d 1233, 1234–1235] [fence enclosing lot of auto body shop and abutting shop not building within meaning of burglary statute]; *State v. Gamble* (1982) 56 N.C.App. 55 [286 S.E.2d 804, 805–806] [fenced-in area partially defined by building in one corner not building within meaning of burglary statute defining building to include " 'any other structure designed to house or secure within it any activity or property' "].)

The out-of-state cases we found holding that a fenced yard is subject to burglary all involve statutes that are more inclusive than ours. (*Jenkins v. State* (Del. 1967) 230 A.2d 262, 275 [junkyard is building subject to burglary because statutory definition of building includes " 'inclosure' "]; *State v. Wentz* (2003) 149 Wn.2d 342 [68 P.3d 282, 284–285] [fenced residential backyard is building subject to burglary because burglary statute expressly includes " 'fenced area' " in definition of building]; *Joy v. State* (Ind.App.Ct. 1984) 460 N.E.2d 551, 557–559 [fenced lumberyard was "structure" subject to burglary under statute requiring entry into building or structure, distinguishing *Day v. State, supra*, 534 S.W.2d 681 on ground that Texas statute referred only to building, not building or structure]; *Baker v. State* (Fla. 1994) 636 So.2d 1342, 1343–1344 [residential backyard subject to burglary because statute defines " 'dwelling' such that the definition includes the curtilage"]; *State v. Hinden* (2010) 224 Ariz. 508 [233 P.3d 621, 622] [burglary statute expressly encompasses entry into " 'fenced commercial or residential yard' "]; *Stanley v. State* (1973) 1973 OKCR 325 [512 P.2d 829, 831–832] [fenced lumberyard subject to burglary under statute referring to entry into " 'any building . . . or other structure or erection, in which any property is kept' "].)

We found no out-of-state cases in which a fenced yard was held to be subject to burglary unless there was some language in the burglary statute that is more inclusive than the language in our statute. All the authority from our sister states dealing directly with fenced yards therefore reinforces our conclusion.

The plain meaning of the statutory language supports our conclusion as well. A "building" is defined as "anything that is built with walls and a roof,

as a house, factory, etc.; structure." (Webster's New World Dict. (2d college ed. 1982) p. 185, col. 2.) A fenced yard is not a building according to common usage.

The People rely on *People v. Valencia* (2002) 28 Cal.4th 1, 11 [120 Cal.Rptr.2d 131, 46 P.3d 920] (*Valencia*), in which it was held that the defendant's penetration into the area behind a window screen of a house (but not through the window glass) was an entry sufficient to support a burglary conviction because the screen was an "element that encloses an area into which a reasonable person would believe that a member of the general public could not pass without authorization." The People contend that, because a reasonable person would know he or she could not enter the locked wrecking yard outside of business hours without authorization, the wrecking yard was a building.

*Valencia* does not support the People's position. The question presented in *Valencia* was what amounted to *entry* of a building, assuming the thing being entered was a building in the first place. The court answered this question by holding that penetrating the outer boundary of a building is entering it, and a window screen is part of the outer boundary of a house. There was no question about whether the house to which the screen was attached was a building. The issue of what structures are buildings was not presented or considered in *Valencia*. In the present case, the question is only whether the wrecking yard was a building; if it was, there is no doubt that the conspiracy encompassed the penetration of its outer boundary (i.e., the fence).

■  The People also suggest that the fenced yard is an appurtenance of the shop building enclosed within it, like the carport in *Christopher J., supra*, 102 Cal.App.3d 76, and the loading dock in *Brooks*. A structure is an appurtenance of a building for purposes of burglary if it is an "integral part" or a "functional part" of the building. (*Brooks, supra*, 133 Cal.App.3d at pp. 207, 208.) A carport is an integral and functional part of a house, and a loading dock is an integral and functional part of a commercial building. When one parks in a carport, one is using a component of the house to which it is attached, and when one unloads cargo at a loading dock, one is using part of the building.

Another example is the display case at issue in *People v. Franco* (1926) 79 Cal.App. 682 [250 P. 698], which was cited in both *Brooks* and *Christopher J.* A Fresno shoestore, located in a basement, had several glass showcases installed in the wall along the staircase leading down to the store entrance. The showcases could only be accessed from the outside of the store; they did not communicate with the store's interior. The defendant broke one of these open and stole shoes. The Court of Appeal rejected his argument that

he could not properly be convicted of burglary because the showcases were not part of the building. The roof of the building covered the showcases, and this made them "part of the store proper." (*People v. Franco, supra,* at p. 684.)

An uncovered yard in which a building is situated is not an "integral part" of the building under any reasonable interpretation of those words, regardless of whether the yard has a fence around it. It does not matter whether, as the People claim, the fence touched the building or the building's wall formed one side of the fenced area. As we have said, there is no evidence of this, but even if there were, the uncovered yard would remain only a yard. The loading dock in *Brooks* was a structure attached to the building. It had a roof, two solid walls and two fenced sides, and it served as the means of loading and unloading cargo coming into and going out of the building. The carport in *Christopher J.* was a structure attached to the house; it had a roof, a wall and a half wall, and its purpose was to shelter the occupants' car just as the rest of the house sheltered the occupants. The fence in this case is not similar. It merely enclosed the property upon which the shop building stood.

When a line of California cases going back almost to the Civil War requires a building to have a roof for purposes of burglary, when the courts of no state with a similar statute have ever held otherwise, and when the dictionary stands shoulder to shoulder with these authorities, it is not for us to say a fenced, uncovered yard can be burglarized. For these reasons, we conclude that the evidence did not support the conviction for conspiracy to commit burglary. Further, the jury instruction stating that an agreement to enter the wrecking yard and an entry into the wrecking yard would suffice to support elements of the offense was erroneous. The conviction must be reversed.

II., III.\*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The conviction for conspiracy to commit burglary, count 1 in case No. 10CM1221, is reversed. The case is remanded to the superior court for the court to vacate its order staying the section 667.5, subdivision (b), enhancements and either to impose or strike those enhancements. The court

---

\*See footnote, *ante*, page 1274.

shall prepare an amended abstract of judgment and forward it to the appropriate prison authorities after the proceedings on remand. The judgment is affirmed in all other respects.

Levy, J., and Gomes, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 8, 2012, S203321.