

# In the Missouri Court of Appeals
## Eastern District

DIVISION ONE

| | |
|---|---|
| STATE OF MISSOURI, | ) ED102764 |
| | ) |
| Respondent, | ) Appeal from the Circuit Court |
| | ) of Warren County |
| vs. | ) |
| | ) Honorable Richard Scheibe |
| CHARLES DAVID GIRARDIER III, | ) |
| | ) |
| Appellant. | ) FILED: December 8, 2015 |

Charles D. Girardier III ("Appellant") was convicted of one count of the Class B misdemeanor of trespass in the first degree, in violation of Section 569.140, RSMo (2000), following a bench trial in the Circuit Court of Warren County. He was sentenced to six months' incarceration in the Warren County Jail. We affirm.

## I. Background

On October 16, 2014, Abel's Quik Stop gas station in Wright City had a no-smoking policy in effect, communicated by four-inch signs with a picture of a red slash through a cigarette. Additionally, the women's restroom – containing only stalls and sinks – was contained within four walls within the store with one entrance and exit door. It was marked by a sign in the hallway leading to the restrooms with a picture of a female and the word "women," as well as a sign on the door to the restroom itself that read, "women." The men's restroom was directly across from the women's room and was marked by a sign that read, "men," on the door.

During October 16, 2014, around 6:48 a.m., Yvonne Redmon was working as Abel's Quik Stop store manager and entered the women's restroom. She noticed someone in the handicap stall wearing blue jeans and white tennis shoes and the smell of cigarettes. Ms. Redmon returned to the women's restroom later that morning and noticed the same pair of blue jeans and tennis shoes in the same stall and that there was still an odor of cigarette smoke. Ms. Redmon asked the person in the stall to stop smoking and informed the person that smoking was not permitted in the store. The person did not respond. About thirty minutes later, Ms. Redmon returned to check the restroom for a third time and saw the same blue jeans and tennis shoes in the stall. Ms. Redmon notified the police, who were dispatched a few minutes before 8 a.m.

Jennifer Beach was also working as a sales associate at the Abel's Quik Stop gas station on the date in question. She entered the women's restroom around 8 a.m. to clean and saw a person wearing jeans and white tennis shoes in the handicap stall; she was unable to clean and left. Ms. Beach returned later and told the same person in the stall to stop smoking. The person responded with "uh-huh" in a deeper tone but sounded "woman like."

Wright City Police Officer Bryan Thomas responded to a dispatch call in reference to a person smoking in the women's restroom at the Abel's Quik Stop on October 16, 2014. Officer Thomas knocked on the door to the women's restroom and announced that he was a law enforcement officer. Upon receiving no response from the person in the women's restroom, Officer Thomas entered and again announced that he was a law enforcement officer. A person then responded in an unidentified and muddled deep female tone. Officer Thomas could not understand what the person was saying. Eventually, he gave another command for the person to come out, and then Appellant exited the stall and was identified as a male. At first, Officer Thomas asked Appellant why he was in the female restroom and Appellant answered he was

2

sorry and unaware. As Officer Thomas escorted Appellant out, he showed Appellant the sign saying "women's" and asked why he was in there for two hours. Appellant responded that he had to defecate "really bad."

Officer Thomas received consent from Appellant to search his person and found a pornographic magazine and a bottle of hand lotion on him, later marked as State's Exhibit 1. At trial, defense counsel objected to the admission of this evidence because it was not relevant. The State argued that it went to Appellant's motive. The trial court admitted State's Exhibit 1. Officer Thomas read Appellant his Miranda[1] warning.

At the end of trial, the trial court found Appellant guilty of the class B misdemeanor of trespass in the first degree. The trial court sentenced Appellant to serve six months in the Warren County Jail consecutive to his sentence in a separate Montgomery County case, No. 14AA-CR00042-01. This appeal follows.

## II. Discussion

Appellant raises two points on appeal. In his first point, Appellant alleges the trial court erred in overruling Appellant's motion for judgment of acquittal at the close of all evidence and in imposing judgment and sentence against him for first-degree trespass. Appellant alleges the trial court violated his rights to due process and to be tried only for the offense with which he is charged, guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Sections 10, 17, and 18(a) of the Missouri Constitution, in that the State did not prove that Appellant "remained unlawfully" in the women's restroom of the Abel's Quik Stop because he was never asked to leave even though employees made contact with him on four different occasions while he remained in the restroom.

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

Second, Appellant alleges the trial court abused its discretion in admitting State's Exhibit 1 into evidence, in violation of Appellant's rights to due process and a fair trial as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 18(a) of the Missouri Constitution. Appellant argues that the exhibit, a pornographic magazine, was both logically and legally irrelevant to the issue of whether Appellant committed trespass in the first degree by remaining unlawfully at Abel's Quik Stop, and Appellant was prejudiced by the evidence because the trial court specifically relied on the evidence when it found Appellant guilty.

We will address each point separately in the order they were raised.

A. Point I: Appellant "remained unlawfully" in the women's restroom.

Appellant first alleges the trial court erred in overruling his motion for judgment of acquittal at the close of all evidence because the evidence did not show that the employees of Abel's Quik Stop asked Appellant to leave the restroom.

1. Standard of Review

Generally, an appellate court's review of the sufficiency of the evidence is limited to whether the State has introduced sufficient evidence for any reasonable juror to have been convinced of the defendant's guilt beyond a reasonable doubt. State v. Nash, 339 S.W.3d 500, 508-09 (Mo. banc 2011). This is not an assessment of whether the Court believes that the evidence at trial established guilt beyond a reasonable doubt but rather a question of whether, in light of the evidence most favorable to the State, any rational fact-finder "could have found the essential elements of the crime beyond a reasonable doubt." Id., quoting State v. Bateman, 318 S.W.3d 681, 687 (Mo. banc 2010) (internal quotations omitted). In reviewing the sufficiency of the evidence, all evidence favorable to the State is accepted as true, including all favorable

4

inferences drawn from the evidence.  Bateman, 318 S.W.3d at 687.  All evidence and inferences to the contrary are disregarded.  Id.  "When reviewing the sufficiency of evidence supporting a criminal conviction, the Court does not act as a 'super juror' with veto powers, but gives great deference to the trier of fact."  State v. Chaney, 967 S.W.2d 47, 52 (Mo. banc 1998) (internal quotations omitted).  "[T]his Court will not weigh the evidence anew since the fact-finder may believe all, some, or none of the testimony of a witness when considered with the facts, circumstances and other testimony in the case."  Nash, 339 S.W.3d at 509, quoting State v. Freeman, 269 S.W.3d 422, 425 (Mo. banc 2008) (internal quotations omitted).

    2.  Analysis

In this case, Appellant argues he was never told to leave the restroom even though Abel's Quik Stop employees made contact with him on four different occasions; thus, Appellant argues there was insufficient evidence to prove that he committed the crime of trespass in the first degree by remaining unlawfully in the women's restroom at Abel's Quik Stop.

In considering whether the evidence is sufficient to support the verdict, we must look to the elements of the crime and consider each in turn.  State v. Grim, 854 S.W.2d 403, 411 (Mo. banc 1993).  Under our standard of review, we are required to take the evidence in the light most favorable to the State and to grant the State all reasonable inferences from the evidence.  Id. Missouri's Revised Statutes, Section 569.140.1 provides that "[a] person commits the crime of trespass in the first degree if he knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure or upon real property."  A person does not commit the crime of trespass in the first degree by entering or remaining upon real property unless the real property is fenced or otherwise enclosed in a manner designed to exclude intruders or as to which notice

5

against trespass is given by: (1) Actual communication to the actor; or (2) Posting in a manner reasonably likely to come to the attention of intruders. Section 569.140.2.

Here, the information charged Count I as first-degree trespass, in violation of Section 569.140, in that Appellant, "on or about October 16, 2014, in the County of Warren, State of Missouri, remained unlawfully in a building located at Abel[']s Kwik [sic] Stop Gas Station and possessed by Yvonne Redmon." The attached facts, which formed the basis for the information and belief, included that Appellant had been occupying and smoking cigarettes in the handicap stall of the women's restroom for approximately two hours; he was revealed to be male upon contact; he disguised his voice as a woman when employees of the gas station and police attempted to make contact with him; and a pornographic magazine and skin lotion were located on his person upon a consensual search.

The evidence adduced at trial, through the testimony of store manager Yvonne Redmon, associate employee Jennifer Beach, and responding police officer, Officer Bryan Thomas, established that Appellant was in the women's restroom, contained by four walls inside of a Shell gas station and accessible only by one door. Missouri courts have found the presence of walls, a roof and doors and windows, even not completely constructed, met the definition of a "building." State v. Ashby, 339 S.W.3d 600, 605-06 (Mo. App. E.D. 2011).

Further, the word "remain" is not defined in the trespassing statute, but the Court can ascertain the word's meaning by giving it its plain and ordinary meaning as found in the dictionary. State v. Blankenship, 415 S.W.3d 121-22 (Mo. banc 2013). Merriam-Webster's 2015 Dictionary defines "remain" as "to stay in the same place or with the same person or group: to stay after others have gone." Merriam-Webster's Dictionary (2015), available online at

6

www.merriam-webster.com/dictionary/remain. The record established that Appellant stayed in the women's restroom for at least an hour, even though others had come and gone.

The only question at issue, then, is whether Appellant "knowingly" remained "unlawfully" in the women's restroom, pursuant to Section 569.140. Chapter 569 of Missouri's statutes defines the phrase "enter unlawfully or remain unlawfully" as when a person

> is not licensed or privileged to do so. A person who, regardless of his purpose, enters or remains in or upon premises which are at the time open to the public does so with license and privilege unless he defies a lawful order not to enter or remain, personally communicated to him by the owner of such premises or by other authorized person. A license or privilege to enter or remain in a building which is only partly open to the public is not a license or privilege to enter or remain in that part of the building which is not open to the public.

Section 569.010. Although this is a criminal law case, real property law is useful in guiding this Court's analysis. A license is a privilege conferred either by writing or by oral permission to do one or more acts on the real estate without possessing any interest therein. Wright v. Edison, 619 S.W.2d 797, 803 (Mo. App. E.D. 1981). It is personal and unassignable and ordinarily revocable. Id. Such a privilege operates to authorize entry on premises for a certain purpose and for a protection to the licensee for acts done by him within the scope of the license. Id. When the scope of the license is exceeded or abused, then the acts of the licensee committed in excess of such authority or after the license is revoked may become a trespass for which the licensee may become liable. Id. Leaving the "public" premises of a business to venture into a posted non-public area changes an "invitee" into a trespasser. Hogate v. Am. Golf Corp., 97 S.W.3d 44, 48 (Mo. App. E.D. 2002); Cochran v. Burger King Corp., 937 S.W.2d 358, 363-64 (Mo. App. W.D. 1996).

Our state's Supreme Court has stated that "a person's right to use public restrooms is about as fundamental a right as one can imagine, probably equal to or more fundamental than

7

speech rights," in discussing a case regarding sexual misconduct involving a school counselor, whose duty it was to prevent disruptive behavior in the school's restrooms.  State v. Beine, 162 S.W.3d 483, 487 (Mo. banc 2005).  However, separating restrooms so that different genders use different facilities provides a license to use only the facility designated for one's gender.[2]

State v. Brown is instructive here because it is distinguishable.  In Brown, the state failed to adduce sufficient evidence to support the defendant's conviction of burglary in the second degree of the sacristy of a Catholic church because the evidence was insufficient to allow the jury to determine beyond a reasonable doubt that the defendant knowingly entered unlawfully – without a license – into the sacristy part of a Catholic church, which was not open to the public, even though the church was.  457 S.W.3d 772, 782 (Mo. App. E.D. 2014).  Noting the sacristy's door was unmarked, the Brown court based its analysis on State v. Weide, where a defendant was convicted for knowingly entering unlawfully the kitchen of a restaurant, where "no visible signs indicated that the restaurant prohibited public entry through the swinging door or even indicated what was behind the door."  Brown, 457 S.W.3d at 782, citing Weide, 775 S.W.2d 255, 257 (Mo. App. W.D. 1989).  The Brown court determined that proof of the defendant's unlawful purpose did not establish that he knew he would have to make an unlawful entry into the private section of the building to achieve that purpose. 457 S.W.3d at 782.

In another case, however, evidence of a defendant's attempt to conceal his entry into a warehouse provided evidence of his knowledge that his entry was unlawful.  State v. Oropeza, 735 S.W.3d 2, 5 (Mo. App. 1987).  Although an alley door was used as an employee entrance

---

[2] Federal Occupational Safety and Health Administration ("OSHA") regulations governing work place sanitation include a requirement that generally, toilet facilities are in separate rooms for each sex in places of employment, unless they can be occupied by no more than one person at a time, locked from the inside, and contain at least one water closet.  29 C.F.R. Section 1910.141(c)(1) (2015).  Washing facilities, too, shall be separately provided for each sex.  29 C.F.R. Section 1910.141(d)(3)(ii) (2015).  Long before OSHA mandated sex-separated bathrooms, nearly every state had enacted similar laws, starting with the state of Massachusetts in 1887.  Griffin, C.J., *Workplace Restroom Policies in Light of New Jersey's Gender Identity Protection*, Rutgers Law Review, Vol. 61:2, 409 at 414, n.24 (2009).

and for milk receiving, there was no evidence that the door was used for general access for the public. Id. The defendant's actions of sneaking up on another person and crouching behind his chair were evidence of his knowledge that his entry was unlawful. Id.

Here, distinguished from Brown and Weide, the evidence established that although the gas station was a place of public business, the women's restroom was clearly and visibly marked with a sign on the door, at eye level, that stated it was for women only. A separate restroom marked for men was clearly and visibly marked directly across the hallway from the women's restroom. Testimony also established that the women's restroom had only stalls and sinks, not urinals, which are typically found in men's restrooms. Appellant, who was male with male features, went into an area of the gas station specifically designated for women, which changed his status from an invitee to a trespasser.

Furthermore, like Oropeza, 735 S.W.3d at 5, Appellant's attempt to conceal himself as a male also provides evidence of his knowledge of his unlawful entry into the women's restroom. Although Appellant first attempted to explain and excuse himself by stating that he was confused and did not "know" he was in the women's restroom, his actions demonstrate his lack of credibility. When Ms. Redmon entered the women's restroom and told Appellant that smoking was not allowed, Appellant did not respond, even though he was the only other person in the room. When Ms. Beach entered the women's restroom and told Appellant to stop smoking, Appellant attempted to disguise his male voice in a female tone. Finally, when Officer Thomas entered the women's restroom and ordered Appellant out of the stall the first time, Appellant again attempted to disguise his male voice in a female tone, different from the voice he used once he actually exited the stall and showed his identity was male. These actions demonstrate Appellant's consciousness of guilt, and furthermore constitute the "knowledge" that Appellant

9

remained in the women's restroom unlawfully. Conduct and declarations of a defendant that are relevant to show a consciousness of guilt or a desire to conceal the offense are admissible because they tend to establish the defendant's guilt of the charged crime. State v. Barton, 998 S.W.2d 19, 28 (Mo. banc 1999).

Appellant also argues that a male entering a woman's restroom is not "unlawful" even when it is clearly marked for women only and when Appellant has no credible excuse for entering the area. Appellant contends that males are often allowed into women's restrooms, such as in the case of a mother bringing a male child with her into the women's restroom. At the same time, however, Appellant contends that a non-employee entering an area marked for "employees only" would be unlawful. We disagree with Appellant's comparisons. First, in both cases of a non-employee entering into an area restricted to employees only and a male entering into a restroom restricted to women, the non-employees and males are without a license to enter those areas. In the case of a mother bringing a male child with her to a women's restroom, although highly doubtful that anyone would attempt to prosecute such harmless behavior, we distinguish that example as one of necessity to avoid danger to the child, who requires supervision and might otherwise be left unattended.[3] See State v. O'Brien, 784 S.W.2d 187, 189-90 (Mo. App. E.D. 1989).

Appellant argues that he was never told to leave the women's restroom and therefore the State failed to prove that he remained unlawfully. However, even without a verbal warning to leave, the evidence established that Appellant "knowingly" remained "unlawfully" based on his actions.

---

[3] A caretaker assisting a disabled person of the opposite gender might also have a necessity to enter a restroom without a license based on the signage. Many public entities have created "family" restrooms, which allow such difficult issues to be avoided.

10

This Court stated in <u>St. Louis County v. Stone</u>, 776 S.W.2d 885, 888 (Mo. App. E.D. 1989), that when a business, a public facility, is involved and a portion thereof is open to the public, a person who enters an area open to the public at a reasonable time and in a reasonable manner has the implied consent of the owner to enter the premises under a limited privilege; as long as that privilege, based upon implied consent, is within the conditional or restricted consent of the owner to enter, the implied consent remains. However, substantial evidence of the stay being prolonged, boisterous conduct, breach of the peace, blocking the entranceways, interference with the public, picketing, or other conduct which would revoke the implied consent of the owner by acts inconsistent with the purposes of the business or facility, causes a trespass. <u>Id.</u>

Here, Appellant never had implied consent to enter the women's restroom out of necessity, but even if he did, his conduct then caused a trespass. The evidence is such that Appellant stayed in the women's restroom for at least one hour, despite other people coming in and leaving. He was addressed by two separate employees at separate times for his smoking conduct, also clearly prohibited conduct in the gas station. Moreover, the evidence demonstrates that Appellant failed to comply when Officer Thomas first ordered that Appellant come out of his stall. Appellant did not exit the stall until Officer Thomas asked him a second time. Accordingly, the evidence is clear that Appellant knowingly remained unlawfully in the women's restroom.

The trial court did not err in overruling Appellant's motion for judgment of acquittal at the close of all evidence and in imposing judgment and sentence against him for Count I, first-degree trespass, based on the State's evidence that Appellant remained unlawfully in the women's restroom. Appellant's first point is denied.

11

B.  Point II:  Evidence was properly admitted.

Appellant next alleges the trial court abused its discretion in admitting State's Exhibit 1 into evidence, in that the exhibit, a pornographic magazine and lotion, was both logically and legally irrelevant to the issue of whether Appellant committed trespass in the first degree by remaining unlawfully at Abel's Quik Stop.  Appellant alleges he was prejudiced by the evidence because the trial court specifically relied on it when finding Appellant guilty.

1.  Standard of Review

A trial court has broad discretion to admit or exclude evidence at trial.  State v. Forrest, 183 S.W.3d 218, 223 (Mo. banc 2006).  "This standard of review compels the reversal of a trial court's ruling on the admission of evidence only if the court has clearly abused its discretion." Id., quoting State v. Madorie, 156 S.W.3d 351, 355 (Mo. banc 2005).  A trial court abuses its discretion when a ruling is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration.  State v. Gonzales, 153 S.W.3d 311, 312 (Mo. banc 2005).  An appellate court reviews the trial court's decision "for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial. Forrest, 183 S.W.3d at 223-24.  Trial court error is not prejudicial unless there is a reasonable probability that the error affected the outcome of the trial.  Id. at 224.

2.  Analysis

Appellant argues the trial court abused its discretion in overruling his objection to State's Exhibit 1 because it was "logically irrelevant" as to whether Appellant remained unlawfully at Abel's Quik Stop.  Appellant further contends that he was prejudiced because the trial court specifically relied on the evidence when it found Appellant guilty of trespass in the first degree. The prosecutor argued during closing:

12

And had he entered the women's restroom in an emergency to use the restroom as an accident, that would be one thing, but the length of time he stayed there, the fact that he's found with pornographic materials and a bottle of lotion smoking cigarettes as a male in a women's restroom, the reasonable inference is he's there for a nefarious purpose.

The trial court admitted the evidence after defense counsel objected and the State argued that the exhibit was relevant because it went to Appellant's motive for remaining in the women's restroom.

To be admissible, evidence must be logically and legally relevant. Eckerd v. Country Mut. Ins. Co., 289 S.W.3d 738, 743 (Mo. App. E.D. 2009).

Evidence is logically relevant if it tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence, or if it tends to corroborate evidence which itself is relevant and bears on the principal issue of the case.

State v. Tisius, 92 S.W.3d 751, 760 (Mo. banc 2002). "Legal relevance is a determination of the balance between the probative and prejudicial effect of the evidence." Claus v. Intrigue Hotels, LLC, 328 S.W.3d 777, 786 (Mo. App. W.D. 2010) (quoting Eckerd, 289 S.W.3d at 743). While the trial court must consider both probative value and prejudice, the two are interrelated: "Evidence acquires *legal relevance* . . . only when the probative value of its *logical relevance* outweighs the danger of unfair prejudice . . ." State v. Bernard, 849 S.W.2d 10, 22 (Mo. banc 1993) (emphasis added). Evidence of uncharged crimes, wrongs, or acts is inadmissible for the purpose of showing the propensity of the defendant to commit such crimes. Id. at 13. Evidence of other crimes or bad acts is admissible, however, if it is logically and legally relevant and tends to establish motive, intent, absence of mistake or accident, or a common plan or scheme. Id.

Here, the evidence of the pornographic magazine and hand lotion, taken by Appellant into the women's restroom where he remained for an extended period of time was not admissible to show Appellant's propensity to commit the crime of trespassing in the first degree. It was

13

admissible, however, to establish Appellant's motive for remaining unlawfully in the women's restroom, as well as the absence of Appellant's mistake or accident. Although Appellant attempted to excuse himself for remaining in the women's restroom by first stating that he was confused and did not "know" he was in the women's restroom, then adding that he had to defecate very badly, the evidence of the pornographic magazine and hand lotion found on his person reveal his nefarious motivation was, indeed, no accident. This evidence corroborates evidence that Appellant knowingly remained unlawfully in the women's restroom and was both logically and legally relevant.

In a judge-tried case, appellate courts presume that the trial court was not prejudiced by inadmissible evidence. State v. Ernst, 164 S.W.3d 70, 74 (Mo. App. S.D. 2005). Regardless of the admissibility of Exhibit 1, Appellant failed to show that the trial court relied on this evidence in finding Appellant guilty. Thus, Appellant failed to demonstrate that the admission of such evidence prejudiced him. Appellant's second point is denied.

### III. Conclusion

The judgment of the trial court is affirmed.

_____
ROY L. RICHTER, Judge

Robert G. Dowd, Jr., P.J., concurs
Mary K. Hoff, J., concurs